**CALTON, Appellant,**

v.

**CV RADIO ASSOCIATES, L.P., Appellee.**

[Cite as *Calton v. CV Radio Assoc., L.P.* (1994), 93 Ohio App.3d 812.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64983.

Decided April 11, 1994.

*Morrison & Laino Co., L.P.A., Kenneth J. Laino* and *Patrick J. Cooney,* for appellant.

*Thrasher, Dinsmore & Dolan, Paul J. Dolan* and *Dale H. Markowitz,* for appellee.

DYKE, Judge.

Plaintiff-appellant, Larry Calton, appeals a summary judgment granted in favor of defendant-appellee, CV Radio Associates, L.P., in his contract and defamation action. Appellant claims that the trial court erred in ruling that the conduct clause of his employment contract was "unambiguous"; that no material question of fact remained as to whether appellee had just cause to terminate him; and that an apology broadcast by appellee was not defamatory. Upon review, we

find appellant's assignments of error to be without merit. The judgment of the trial court is affirmed.

The record demonstrates that on December 3, 1991, appellant entered into a one-year written contract with appellee to host a daily, three-hour sports/talk program on appellee's radio station, WKNR. On June 10, 1991, appellant used the phrase "jew you down" in response to a call-in listener's question about "trading" professional baseball players. The exchange occurred as follows:

"Call-in Listener: Have there been any trade rumors about any of these guys going anywhere?

"Calton: Not right now because it's very difficult to make a trade when nobody's hitting, nobody's doing much because other clubs will try to really *jew you down*. It's like driving a car. If a valve goes bad, nobody wants to take it on trade but if the car's running great and looks good everybody wants it. And so its difficult to trade right now."

Within minutes of the broadcast of this conversation, four listeners called in to express their offense and distaste over appellant's use of the phrase, "jew you down," even though appellant made several on-air apologies. A fifth listener, called in to support appellant and to denigrate the preceding callers. The show's producer also received numerous phone calls from listeners who complained about the remark without going on the air.

The following day, *to wit*, June 11, 1991, WKNR management conferred with the station's corporate senior vice president, personnel from the department of human resources and the station's corporate legal counsel. After this conference, management orally notified appellant that he was terminated for using the phrase "jew you down" during his broadcast. Written notification of termination, dated June 11, 1991, was delivered to appellant by ordinary mail on or about June 13, 1991, pursuant to Paragraph 15 of appellant's employment contract. On June 13, 1991, WKNR's General Manager broadcast an official apology concerning appellant's remark. During the days following these events, the station received numerous calls and letters, both positive and negative, concerning appellant's remark and the station's decision to terminate him. The station was also the focus of significant media attention.

On December 30, 1991, appellant filed the instant action for breach of contract and defamation, seeking compensatory damages in the amount of $460,000 and punitive damages in the amount of $920,000. On December 31, 1992, the trial court granted appellee's motion for summary judgment, issuing the following "Order" dated December 31, 1992:

"This Court finds that Larry Calton was terminated by CV Radio Associates with just cause pursuant to a valid, unambiguous contract clause in his employ-

ment agreement after his on-air ethnic slur which 'reflect[ed] unfavorably on WKNR.'

"This Court finds that as a matter of law the Defendant's lawful action terminating [its] employee Calton based on his violation of his employment agreement does not give rise to a defamation action. Calton had failed to produce evidence supporting any other specific facts to substantiate a claim of defamation by Calton against WKNR."

The instant appeal followed.

## I

"The trial court erred in ruling that the phrase 'reflect[ed] unfavorably on WKNR' (in Paragraph 15 of Larry Calton's contract) is an 'unambiguous contract clause.' "

Appellant claims that the language found in Paragraph 15 of his employment agreement is ambiguous and subject to different interpretations. A review of appellant's brief in opposition, however, fails to demonstrate the different interpretations to which he refers.[1] Hence, appellant's argument is not well taken.

"The interpretation of a written agreement is, in the first instance, a matter of law for the court, and should be submitted to the jury only when provisions of the contract are ambiguous." *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371, paragraph two of the syllabus.

"[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150.

"The purpose of contract construction is to effectuate the intent of the parties. *Skivolocki v. East Ohio Gas Co.* (1974), 38 Ohio St.2d 244 [67 O.O.2d 321], 313 N.E.2d 374, paragraph one of the syllabus. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. The court need not go beyond the plain language of

---

1. A review of appellant's brief demonstrates reliance upon the opinion of a hostile witness, WKNR's former general manager, who had a claim pending against the station at the time of his deposition. This witness opined that appellant's use of the phrase "jew you down" was not a "fireable offense" and cited the remarks of listeners who were unhappy with appellant's termination. These statements, however, are irrelevant to and fail to support appellant's legal theory that the contract phrase, "reflects unfavorably," is ambiguous and subject to different interpretations.

the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. *Id.* at paragraph two of the syllabus." *Apex Sales Agency, Inc. v. The Mather Co.* (Nov. 19, 1992), Cuyahoga App. No. 60344, unreported, 1992 WL 354816.

■ The record demonstrates that appellant was hired pursuant to the terms of a specific, employment agreement. Paragraph 15 of that agreement states:

"If you shall commit any act which would bring you into public disrepute, contempt, scandal or ridicule, or which reflects unfavorably on WKNR, WKNR may, upon written notice to you, immediately terminate your employment hereunder. In the event WKNR terminates pursuant to the provisions of this paragraph, WKNR shall be discharged from all obligations hereunder by making any and all payments earned and payable on account of services performed by you prior to such date of termination." (Defendant's Exhibit 1—"The Agreement," at page 5.)

The plain and ordinary meaning of Paragraph 15 is that appellant must refrain from conducting himself in a manner which brings him into "public disrepute, contempt, scandal or ridicule" or risk termination. Appellant's argument that the phrase which follows this conduct clause is too broad to give notice as to prohibited conduct is unpersuasive. The ordinary meaning of the phrase "reflects unfavorably" is not only clear on its terms but it is further defined and clarified by the descriptive words which precede it. Moreover, as an experienced broadcaster,[2] appellant can hardly claim to lack notice of the fact that an employer can make the use of an ethnic or racial slur a ground for termination and that the broadcast of such a slur would in fact "reflect unfavorably" upon the station.

We find that appellant has failed to demonstrate that the phrase at issue is subject to differing interpretations. We also find that he has failed to demonstrate that the plain and ordinary meaning of the phrase results in manifest absurdity or that some other meaning is clearly intended from the face or overall content of the instrument. The trial court did not err in finding that appellant was terminated pursuant to a valid and unambiguous contract clause. His first assignment of error is overruled.

## II

"The trial court erred in granting WKNR's motion for summary judgment because ordinary, intelligent people could—and in fact do—reasonably disagree about whether there was a justifiable reason to terminate Larry Calton."

---

2. The record demonstrates that appellant had been a professional radio and television broadcaster for approximately twenty years at the time he signed the contract with appellee.

Appellant's assignment of error is without merit as it inappropriately applies a standard of review formulated in an "employment at will" case, *to wit, Mers v. Dispatch Printing Co.* (1988), 39 Ohio App.3d 99, 529 N.E.2d 958, to the instant case, which involves an explicit, one-year employment agreement.

In the instant case, the parties entered into a five-page, written agreement containing a definite term of employment and an express provision addressing cause for immediate discharge.

Pursuant to Civ.R. 56(C), summary judgment is proper if the trial court determines that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." See *Temple v. Wean, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, and *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

The record demonstrates that appellant was an experienced broadcaster; that he was hired to host a non-controversial sports/talk show; that he signed an employment contract which contained a specific conduct clause that permitted management to terminate him if he committed an act which brought him into "public disrepute, contempt, scandal or ridicule or which reflect[ed] unfavorably on WKNR." Appellant's use of an ethnic slur clearly falls into that class of prohibited conduct. Appellant admitted and acknowledged that his use of the slur was offensive and that it was unprecedented in the sports talk show business.

The fact that appellant submitted various letters, phone messages and faxes which criticized management's judgment in terminating him is irrelevant to the trial court's construction of the terms of the instant agreement and the parties' intent in entering into that agreement. Appellant's remark angered and alienated numerous members of WKNR's audience. It subsequently prompted significant audience and media attention thereby exposing the station to the controversy and disfavor it contracted to avoid.

The issues appellant raises as genuine questions of material fact[3] are immaterial to the trial court's inquiry into whether, pursuant to the plain language of the

---

3. Appellant contends that the fact that he apologized immediately after uttering the slur; that the fact that the slur could have been a pretext for termination; that his claim that he was terminated for violating a general company policy and not a specific provision of his contract; and that management's off-the-air racial remark operate to create a jury question with respect to whether appellee had just cause to terminate him. We disagree and find that the issues

agreement, appellee could lawfully terminate appellant. Appellant's second assignment of error is overruled.

## III

"The trial court erred in ruling that WKNR's termination of Larry Calton was lawful and that statements made by WKNR concerning said termination were not defamatory."

"To establish a defamation claim, a plaintiff must demonstrate the existence of a *false publication* causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145, 486 N.E.2d 1220, 1222. See, also, *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 95 N.E. 735." (Emphasis added.) *Ashcroft v. Mr. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 365, 588 N.E.2d 280, 283–284.

■ Appellant has failed to establish a *prima facie* claim for defamation. Appellant produced no evidence that the content of appellee's on air statement[4] was false or that it was the proximate cause of his alleged injury. Appellant's third assignment of error is overruled.

## IV

"The depositions of James Glass and James Dolan are properly before the trial court and should be a part of the appellate record."

Appellant's fourth assignment of error is moot as the parties, by joint stipulation, filed the depositions of James Glass and James Dolan pursuant to App.R. 9(E). Hence, they are a part of this record on appeal. Appellant's fourth

---

appellant raises are irrelevant to the trial court's construction of appellant's employment agreement.

4. The on-air statement to which appellant refers reads as follows:
"Good Afternoon, I am Bob Barnes, Vice President & General Manager of WKNR Radio.
"On Monday afternoon, SportsTALK host Larry Carlton [*sic*] issued an on the air remark during his program. Although what our 'on-air' personalities say when broadcasting does not necessarily reflect the opinion of WKNR's management, Mr. Carlton's [*sic*] remarks were both offensive and inappropriate to a portion of our audience. In addition, Mr. Calton's remarks did not reflect the level of professionalism and responsibility we aim to provide here at WKNR.
"WKNR apologizes to anyone who may have been offended by Mr. Calton's remarks.
"We specifically are against any form of discrimination based on race, color, creed or ethnic origin as well as being against any comments that perpetuate a stereotypical description of any group of people."

assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

HARPER, P.J., concurs.

MATIA, J., dissents.