Plaintiff-appellant Cliff Felden appeals from the trial court order that granted the motion for summary judgment filed by appellant's former employer, defendant-appellee First National Supermarkets, Inc.
Appellant contends genuine issues of material fact remain as to whether the handbook appellee gave to its employees constituted an employment contract requiring "good cause" for dismissal and as to whether he provided sufficient proof to support his claim of intentional infliction of emotional distress. Since this court finds neither of appellant's contentions to have merit, the trial court's order is affirmed.
The record reflects appellant originally began working for appellee at its State Road and Brookpark Road location in 1964. Appellant was hired as a stock person, but over the years of his employment also worked as a cashier and an "Acting Manager."[1]
Appellant apparently received an "Employee Handbook" during his employment with appellee, which outlined the company's rules and regulations.[2]
As an employee of appellee, appellant also was a member of Local 880 of the United Food and Commercial Workers' Union. The union had a collective bargaining agreement ("CBA") with appellee, which contained the following relevant clauses:
 This Agreement made * * * between CLEVELAND FOOD INDUSTRY COMMITTEE, on behalf of its members, hereinafter referred to, separately and collectively, as the "Employer," and UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL No. 880, chartered by the United Food and Commercial Workers International Union, AFL-CIO-CLC, hereinafter referred to as the "Union."
ARTICLE I
Recognition and Union Security
 Section 1. The Employer recognizes the Union as the sole bargaining agent for all food store employees in its retail outlets located in the Ohio counties of Ashtabula, Cuyahoga, Erie, Geauga, Huron, Lake, Lorain and Medina, but excluding meat department employees in all stores, regular office clerical personnel, managers, and other supervisors as defined in the National Labor Relations Act, as amended.
* * *
ARTICLE II
Management Rights
 In addition to the management rights specified elsewhere in the Agreement, the management of the business and the direction of the work force, including, but not limited to the right * * * to hire, suspend, or discharge for just cause * * * to establish and maintain reasonable rules and regulations covering the operation of the store, * * * are vested exclusively in the Employer, except to the extent modified by this Agreement, and provided further, that the Employer shall not exercise such rights in an arbitrary or capricious manner.
* * *
ARTICLE IV
Working Conditions
* * *
 Section 6 (b). The Employer shall submit to the Union a list of employee terminations and leaves of absence with each monthly dues report.
* * *
 Section 11 (a). No employee shall be disciplined or discharged without just cause.
* * *
ARTICLE XV
Grievance Procedure
 Section 1. Should any dispute or grievance arise under this Agreement, it shall be settled in accordance with the procedure set-forth in this Article, and, except as otherwise specifically provided in this Agreement, this procedure is the sole and exclusive method of disposing of such grievances.
* * *
 Section 4. The time limits specified * * * above may be extended by mutual agreement but shall otherwise be enforced in that the dispute or grievance shall be decided against any employee or party failing to observe the time limits.
(Emphasis added.)
On October 15, 1991 appellant was assigned to work as a cashier in the front office of the store. While he was so engaged, another store employee, Belinda Shaw, entered the office and presented some store items for purchase. She told appellant she had coupons for the items. Appellant entered the items into the register[3] then also began to enter the coupon amounts. As he did so, however, appellant observed he was using the incorrect key. Appellant's attempt to void the transaction caused the cash register to cease functioning.
Appellant's manager entered the office at this point. The manager noticed appellant behaving in a suspicious manner; upon investigation, the manager observed the coupons appellant was in the process of accepting were ones that did not correlate to the goods the other employee was purchasing. Two days later, appellant was suspended from his employment with appellee for alleged "coupon fraud."
On October 18, 1991 appellant filed a grievance with the union to protest appellee's decision. While appellant's grievance was pending, on October 31, 1991, appellee discharged appellant from his employment for "coupon fraud and violation of register policy." Appellee duly notified the union of its decision pursuant to Art. II, Section 6 (b) of the CBA.
After its investigation of the incident, on December 25, 1991, the union notified appellant that his grievance was denied. It based its decision on appellant's lack of "credibility," certain "problems" with appellant's case, and objective facts that were not in appellant's favor.
Appellant apparently did not pursue his appeal rights as specified in Article XV of the CBA. Instead, on September 11, 1995, appellant instituted the instant action against appellee in the Cuyahoga County Court of Common Pleas. Appellant set forth four causes of action in his complaint as follows: (1) intentional infliction of emotional distress for terminating "a 25 year longterm employee"; (2) breach of the contract of employment for terminating appellant without "good cause" in contravention of the "Employee's Handbook"; (3) violation of "public policy" for making "false allegations" against appellant to justify his termination; and (4) sex discrimination.
Appellee's answer to appellant's complaint denied the pertinent allegations and set forth several affirmative defenses. Thereafter, discovery proceeded in the action.
The record reflects appellee filed a motion for summary judgment on January 17, 1997, which the trial court subsequently ordered stricken for appellee's failure to request leave to file the motion.
Subsequently, at a pretrial held on November 4, 1997, the trial court granted appellee leave to file its motion for summary judgment instanter.
Appellee argued it was entitled to judgment on appellant's claims for the following reasons: (1) appellant's first three claims were preempted by federal labor law, viz., the Labor Management Relations Act, 29 U.S.C. § 141, et seq. ("LMRA"); (2) appellant failed to timely file an appeal pursuant to the CBA; (3) appellant could provide no evidence to support the elements of either a claim of intentional infliction of emotional distress or a claim of sex discrimination; and (4) appellant's "public policy" claim actually was a claim of defamation and thus untimely filed pursuant to R.C. 2305.11 (A).
Appellee attached to its motion as exhibits portions of appellant's deposition testimony, a copy of the CBA, a copy of appellant's grievance, a copy of appellee's notification of appellant's termination to the union, and a copy of the union's decision regarding appellant's grievance.[4]
Appellant responded to appellee's motion with a brief in opposition. Appellant argued summary judgment was inappropriate for the following reasons: (1) his claims fell outside the purview of federal preemption; (2) he "sufficiently stated a prima facie case of intentional infliction of emotional distress"; (3) his "public policy" violation claim actually was based upon sex discrimination; and (4) certain female employees were not terminated for "theft incidents." Appellant attached to his brief only his affidavit, which is set forth in its entirety as follows:
 I, Cliff Felden, having duly been sworn by the State of Ohio, state the following is true and correct according to my knowledge and beief (sic):
 1. I necessitated care by Dr. Daniel Bandal, 11328 Euclid Ave., because of the treatment I received by Finast.
 2. Due to the unfair termination by Finast, I was counselled for anxiety disorder by Dr. Bandal on or about January of 1997.
 3. In August of 1996, the VA Hospital treated me for anxiety disorder. I received 10% disability, due to the anxiety over the termination by Finast.
Although appellee subsequently filed a reply brief objecting to appellant's affidavit, the brief contained no new evidentiary materials.
On February 26, 1998 the trial court issued its opinion and order granting appellee's motion for summary judgment. In pertinent part, the trial court stated appellant's affidavit was insufficient to prove his emotional trauma was severe and debilitating; thus, his cause of action for intentional infliction of emotional distress could not succeed. The trial court further stated that since it was "well-settled law in Ohio that employment handbooks are not contracts," appellant could not support his breach of contract claim. Based upon the foregoing, the trial court declined to address "the preemption issue."
Appellant timely filed his appeal from the trial court's opinion and order; he presents two assignments of error for this court's review.[5]
Appellant's first assignment of error states:
 THE TRIAL COURT ERRED WHEN IT FAILED TO RECOGNIZE THAT THE EMPLOYER'S HANDBOOK CONSTITUTES AN EMPLOYMENT CONTRACT WHICH CANNOT BE BREACHED WITHOUT JUST CAUSE.
Appellant argues the trial court's decision that the "Employee Handbook" failed to constitute a contract as a matter of law was improper. In support of this argument, appellant attaches to his appellate brief what he asserts is a copy of the document at issue. However, this document was never included in the record below; hence, this court may not consider it. App.R. 12 (A) (1) (b); App.R. 9 (A); see, also, Middletown v. Allen (1989), 63 Ohio App.3d 443
at 449.
Civ.R. 56 (C) makes summary judgment proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Norris v. Ohio Std. OilCo. (1982), 70 Ohio St.2d 1. Once the moving party identifies those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claim, the nonmoving party must produce evidence on that issue and may not rely on merely the unsworn allegations of his complaint. Dresher v. Burt (1996), 75 Ohio St.3d 280;Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108.
In this case, appellant not only failed to attach a copy of the "Employee's Handbook" as the "written instrument" upon which he based his breach of contract claim as required by Civ.R. 10 (D), he failed to introduce the "Employee's Handbook" into evidence in the proceedings below at any time. Thus, his arguments on appeal with regard to any representations made in the handbook are unavailing.[6] See, e.g., Calton v. CV Radio Assoc., L.P.
(1994), 93 Ohio App.3d 812; Uebelacker v. Cincom Systems, Inc.
(1988), 48 Ohio App.3d 268; cf., Hackman v. Farmers InsuranceExchange (Dec. 7, 1995), Franklin App. No. 95APE05-637, unreported.
Appellee's evidence, however, proved the following: (1) the only contract in existence that was binding upon the parties was the CBA; (2) appellant was both an employee-at-will[7] and a union member; (3) the CBA permitted appellee to discharge union employees for just cause; (4) following appellee's disciplinary action against him based upon the incident, appellant followed the grievance procedure set forth in the CBA; and (5) the union determined appellee had "just cause" for terminating appellant's employment. In short, appellee's evidence demonstrated appellant could not prove his claim that appellee breached any contract of employment with him. Calton v. CV Radio Assoc., L.P. supra; cf.,Compston v. Automanage, Inc. (Apr. 30, 1990), Clermont App. No. CA89-11-093, unreported.
Since appellant provided no evidence that appellee breached any contract of employment, the trial court correctly granted appellee's motion for summary judgment on his claim. Wing v.Anchor Media, Ltd. of Texas, supra. Accordingly, appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED WHEN IT FAILED TO RECOGNIZE THAT EXPERT TESTIMONY IS NOT MANDATORY TO FIND ELEMENTS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.
Appellant argues he was not required to produce expert testimony regarding the severity of his emotional distress; therefore, the trial court's decision was improper. In making this argument, appellant assumes he established the other requisite elements of his claim. Appellant is incorrect.
The elements of a claim for intentional infliction of emotional distress were set forth in Yeager v. Local Union 20 (1983),6 Ohio St.3d 369 at 374. A plaintiff is required to demonstrate the defendant's intent was to cause emotional distress or the defendant knew or should have known his actions would cause plaintiff emotional distress, the defendant's action was extreme and outrageous, the defendant's action proximately caused plaintiff's "psychic" injury, and the resultant emotional injury to the plaintiff was serious. Uebelacker v. Cincom Systems, Inc.,supra.
In this case, appellee's evidence proved both that it followed established procedures prior to terminating appellant's employment and that its action was justified. Thus, in the absence of any other evidence from appellant, there was no proof appellee's conduct was either intended to cause appellant emotional harm or extreme and outrageous. Ashcroft v. Mt. SinaiMedical Ctr. (1990), 68 Ohio App.3d 359; Lakota Loc. School Dist.Ed. of Edn. v. Brickner (1996), 106 Ohio App.3d 637 at 650.
Moreover, appellant provided no competent evidence regarding proximate causation since this court has stated expert testimony is required to establish this element of a claim of intentional infliction of emotional distress. Dickerson v. Internatl. UnitedAuto Workers Union (1994), 98 Ohio App.3d 171 at 185, citingGrote v. J. S. Mayer Co. (1990), 59 Ohio App.3d 44, 47.
Finally, appellant's deposition testimony and his affidavit were insufficient to prove his emotional injury was serious. Appellant stated only that he was "very shocked and put out and nervous about's appellee's decision to terminate his employment. Appellant stated that he was neither debilitated by nor "unable to cope adequately" with the distress he felt over his termination. Paugh v. Hanks (1983), 6 Ohio St.3d 72 at syllabus 3 (a). Furthermore, in his affidavit, appellant stated only that he was treated "for anxiety disorder." Simple anxiety does not fall within the Ohio Supreme Court's concept of what constitutes a severe emotional injury. Paugh v. Hanks, supra, at 80; Phung v.Waste Mgt., Inc. (1994), 71 Ohio St.3d 408 at 410-411; see, also,Katterhenrich v. Fed. Hocking Local School Dist. Bd. of Edn.
(1997), 121 Ohio App.3d 579 at 590; Roe v. Franklin Cty. (1996),109 Ohio App.3d 772 at 784; Dickerson v. Internatl. United AutoWorkers Union, supra, at 184-185.
From the foregoing, it is clear appellee provided evidence that demonstrated appellant could not support his claim for intentional infliction of emotional distress. Since appellant's affidavit was insufficient to establish the necessary elements of such a claim, the trial court did not err in granting appellee's motion for summary judgment. Ashcroft v. Mt. Sinai Medical Ctr.supra.
Accordingly, appellant's second assignment of error also is overruled.
The decision of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES W PORTER, A.J. and TERRENCE O'DONNELL, J. CONCUR
 ___________________________________ JUDGE KENNETH A. ROCCO
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S. Ct. Prac. R. II, Section 2 (A) (1).
[1] Quotes are taken from the pleadings and evidentiary materials filed in the trial court.
[2] Although appellant alluded to the "Employees Handbook" in his complaint against appellee, he neither attached a copy to the complaint nor introduced a copy of it into the record of the proceedings in the trial court.
[3] The record reflects it was against appellee's company policy for an employee to be present in the office at the time his or her purchases were being entered into the register.
[4] Although none of these documents was verified, appellant did not object to them.
[5] Appellant does not challenge the trial court's decision granting judgment to appellee on his claims of "public policy" violation and sex discrimination.
[6] Moreover, appellant's arguments regarding "promissory estoppel" were not raised in the trial court; hence, they will not be considered on appeal. First Federal S. L. Assn. of Akronv. Cheton Rebe (1989), 57 Ohio App.3d 137 at 144; Cf., Poskocilv. The Cleveland Institute of Music (Apr. 24, 1997), Cuyahoga App. No. 71425, unreported.
[7] Based upon these two facts alone, appellee's argument that appellant's claim was preempted by the LMRA is persuasive. See,Allis-Chalmers Corp. v. Lueck (1985), 471 U.S. 202 at 221; Welshv. United Parcel Service, Inc. (1987), 36 Ohio App.3d 80; Streetv. Gerstenslager Co. (1995), 103 Ohio App.3d 156.