**ASHCROFT, Appellant,**

**v.**

**MOUNT SINAI MEDICAL CENTER, Appellee.**

[Cite as *Ashcroft v. Mt. Sinai Medical Ctr.* (1990), 68 Ohio App.3d 359.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 57720.

Decided Dec. 10, 1990.

*Walter P. Bubna,* for appellant.

*Reminger & Reminger Co., L.P.A.,* and *Craig A. Marvinney,* for appellee.

ANN McMANAMON, Judge.

Registered nurse Mary Ann Ashcroft sued Mt. Sinai Hospital and Mary Holton for false imprisonment, defamation, tortious interference with contract

and other "advantageous economic relations," as well as intentional and negligent infliction of emotional distress. These claims arise from Ashcroft's detention by a Mt. Sinai Hospital security guard for suspected shoplifting from the hospital gift shop. Upon the defendants' motion, the trial court entered summary judgment for the hospital and Holton on all claims. In a timely appeal, Ashcroft challenges the ruling. Our review compels affirmance.

Ashcroft is a private duty nurse who provides patient services as an independent contractor through Private Practices Nurses Agency ("PPN"). On June 30, 1987, Ashcroft was furnishing such nursing care for a Mt. Sinai Hospital patient. During her evening break, Ashcroft visited the hospital gift shop, where she examined several pairs of reading glasses. After purchasing some food, Ashcroft left the gift shop. As she passed through the door, an electronic detection alarm sounded. According to Ashcroft, she returned to the shop where she deposited her keys and passed through the door, again sounding the alarm. Eventually, Ashcroft left the gift shop even though she continued to set off the alarm. Officer Dennis Brutton, a hospital security guard subsequently stopped Ashcroft in a hospital stairwell and returned her to the gift shop.

In an affidavit attached to the defendants' summary judgment motion, Sergeant Thomas Keating, another security guard for the hospital, stated that, as he approached the gift shop in response to the alarm, he observed Ashcroft standing in the gift shop with Officer Brutton. Keating averred he observed a pair of reading glasses drop from Ashcroft's coat onto the floor where Ashcroft attempted to kick them under the sales counter. In her deposition, Ashcroft denied dropping the glasses but admitted they were on the floor by her feet. Keating escorted Ashcroft to the security department where he telephoned Cleveland Police. Ashcroft claims Holton later posted a note at Mt. Sinai stating Ashcroft was no longer permitted to work at the hospital.

In her sole assignment of error, Ashcroft asserts the trial court improperly entered summary judgment on her claims.

■ The entry of summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence most strongly in favor of the party opposing the motion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. The party opposing summary judgment, however, may not rest upon allegations but must produce documentary evidence setting

forth specific facts that create a genuine issue for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

Initially, Ashcroft contends a genuine issue of material fact remains as to her claim for false imprisonment. The elements of false imprisonment are delineated in *Feliciano v. Kreiger* (1977), 50 Ohio St.2d 69, 71, 4 O.O.3d 158, 159, 362 N.E.2d 646, 647:

" ' * * * to confine one intentionally without lawful privilege and against his consent within a limited area for any appreciable time, however short.' 1 Harper and James, The Law of Torts, 226 Section 3.7 (1956)."

■ Ashcroft asserts the security guards were without lawful privilege to detain her. R.C. 2935.041 authorizes the temporary detention of suspected shoplifters and provides in relevant part:

"(A) A merchant, or his employee or agent, who has probable cause to believe that items offered for sale by a mercantile establishment have been unlawfully taken by a person, may, for the purposes set forth in division (C) of this section, detain the person in a reasonable manner for a reasonable length of time within the mercantile establishment or its immediate vicinity.

" * * *

"(1) To recover the property that is the subject of the unlawful taking, criminal mischief, or theft;

"(2) To cause an arrest to be made by a peace officer."

Ashcroft argues this statute is inapplicable to hospitals. We find her argument unpersuasive in the instant case since the alleged theft occurred inside the hospital gift shop.

■ Ashcroft also disputes the existence of probable cause. The gift shop alarm system sounded when Ashcroft attempted to leave the store. Sergeant Keating averred he observed the glasses drop from Ashcroft's coat onto the floor, where she allegedly kicked them under the sales counter, and that, in his experience, the alarm had never gone off "without the presence of gift shop merchandise on the person triggering the alarm." Finally, Keating stated the alarm system did not sound when Ashcroft finally left the store en route to the security department. The alarm was activated, however, when Keating left the store with the glasses Ashcroft allegedly stole.

In her affidavit, Ashcroft avers that she took nothing from the gift shop. The issue, however, is not whether Ashcroft actually stole the glasses but whether the guards had probable cause to suspect her of shoplifting. See *Adamson v. May Co.* (1982), 8 Ohio App.3d 266, 8 OBR 358, 456 N.E.2d 1212;

*Honesty v. Leader Discount Drug Stores Co.* (Oct. 1, 1987), Cuyahoga App. No. 52798, unreported, at 5, 1987 WL 17898. Ashcroft's affidavit contains no facts specifically refuting Keating's observations. In her deposition, Ashcroft admits the alarm sounded as she left the gift shop, and acknowledges the glasses were on the floor near her feet when Officer Brutton took her back into the store. In light of the evidence, we find that reasonable minds could only conclude that the guards had probable cause to detain Ashcroft for suspected shoplifting. Thus, summary judgment was proper on the false imprisonment claim.

■ Ashcroft also disputes the entry of summary judgment on her defamation claims. To establish a defamation claim, a plaintiff must demonstrate the existence of a false publication causing injury to a person's reputation, or exposing him to public hatred, contempt, ridicule, shame or disgrace, or affecting him adversely in his trade or business. *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145, 486 N.E.2d 1220, 1222. See, also, *Cleveland Leader Printing Co. v. Nethersole* (1911), 84 Ohio St. 118, 95 N.E. 735.

■ The record contains no evidence that the defendants published false statements which defamed Ashcroft. Defendant Holton allegedly posted a note stating that Ashcroft was no longer permitted to work at Mt. Sinai. In her deposition, Ashcroft admitted that no explanation or statements regarding the alleged shoplifting incident were included in the note. Ashcroft also contends she lost income as a result of the allegedly defamatory statements. However, Ashcroft can cite no specific statement published by defendants to her prospective employers. Rather, she admits to basing her allegations on speculation and "rumors by way of the grapevine." This lack of evidence is fatal to her claim. Cf. *Widok v. Ford Motor Co.* (Apr. 21, 1988), Cuyahoga App. No. 53635, unreported, 1988 WL 38113. Thus, summary judgment was properly entered on Ashcroft's defamation claims.

■ Ashcroft's claim for tortious interference with contract and other "advantageous economic relationships" similarly fails. A cause of a action for tortious interference with an economic relationship requires a showing that:

" ' * * * one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another * * *.' *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57 [9 O.O.3d 216, 219, 379 N.E.2d 235, 238]." *Smith v. Klein* (1985), 23 Ohio App.3d 146, 148, 23 OBR 387, 389, 492 N.E.2d 852, 855, fn. 1.

■ Nothing in the record indicates the defendants communicated or in anyway induced Ashcroft's prospective employers not to contract with her. As we previously noted, Ashcroft admits her allegations are based on mere rumor and speculation. Summary judgment was proper on this claim.

■ Finally, Ashcroft alleges that the defendants' actions constitute intentional and/or negligent infliction of emotional distress. A claim for intentional infliction of serious emotional distress requires proof of four elements:

" * * * 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' Restatement of Torts 2d (1965) 73, Section 46, comment d; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d 77, Section 46, comment j." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 66, 463 N.E.2d 98, 103.

■ Ashcroft has failed to show any conduct by defendants so "extreme and outrageous," as to go beyond the bounds of decency or be considered intolerable to a civilized community. Based upon probable cause, the hospital guards lawfully detained Ashcroft for shoplifting. She was escorted to the security department to await the arrival of the police. In her deposition, Ashcroft admits she was neither mistreated nor physically threatened. Her complaints that Keating used "endearing" names such as "sweetheart" to address her hardly amount to outrageous treatment. Furthermore, even if Ashcroft were falsely imprisoned, her treatment was not so outrageous as to permit a separate cause of action for intentional infliction of emotional distress. See *Pournaras v. Pournaras* (Dec. 19, 1985), Cuyahoga App. Nos. 49936 and 49937, unreported at 12, 1985 WL 4613. Thus, summary judgment was properly entered for the defendants on this claim.

Ashcroft's claim for negligent infliction of emotional distress also is wholly unsupported by the record. As we stated, the officers had probable cause to detain Ashcroft. Their actions were not negligent. Further, Ashcroft has offered no evidence of severe and debilitating serious emotional distress as delineated in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of the syllabus. The court properly entered judgment for defendants on this claim.

Accordingly, Ashcroft's assignment of error is overruled.
The judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J., and JOHN F. CORRIGAN, J., concur.