CONLEY

v.

VanCAMP.

Court of Common Pleas of Ohio,
Clermont County.

No. 93–CV–0370.

Decided March 31, 1994.

30

*Sandra M. Scott,* for plaintiff.

*Donald White,* Clermont County Prosecuting Attorney, and *Elizabeth Mason,* Assistant Prosecuting Attorney, for defendants.

---

ROBERT P. RINGLAND, Judge.

This matter came before the court on February 25, 1994, pursuant to defendants' motion for summary judgment. After having reviewed the arguments as well as depositions and other evidence submitted by the parties, the court hereby renders a decision as follows.

In October and November 1989, the Clermont County Narcotics Task Force was investigating the criminal activities of an individual named Cheryl Hunt, whose maiden name was Conley. During the course of this investigation, Cheryl Hunt sold one and a half pounds of marijuana to a confidential informant on November 3, 1989. The Clermont County Grand Jury returned a secret indictment against Cheryl Hunt on January 26, 1990. As a result, a warrant and summons for her arrest were issued the next day. An agent of the Task Force attempted to serve the warrant and arrest Cheryl Hunt on January 27, 1990, but did not succeed. After several more attempts proved unsuccessful, the warrant was returned to the Clermont County Sheriff's Office in accordance with standard procedures.

Once the warrant was returned to the sheriff's office, the warrant was to be entered into computer databases (LEADS and NCIC), and then the sheriff's office was supposed to make additional attempts to serve the warrant. Information on Cheryl Hunt was not immediately entered into the computer system at the sheriff's office, however, since there was insufficient identifying information on the shuck of the warrant. After the warrant had been stored in a drawer at the sheriff's office for a period of time, Lieutenant Wilson of the sheriff's department found the warrant and insisted that further identifying information be gathered in order to get the information entered into the computer system.

The warrant clerk at the sheriff's office contacted the Task Force in order to obtain more information on Cheryl Hunt. Since Detective McMillan was originally the person at the Task Force who was assigned to investigate Cheryl Hunt's activities, he was the one ultimately responsible for getting the requested information back to the sheriff's office. Although Detective McMillan testified that he was not sure how he obtained the additional identifying information on Cheryl Hunt, he did remember interviewing a couple of individuals in order to gather more information at some point in his investigation. Detective McMillan returned the wrong information to the sheriff's office. He sent them the date of birth and Social Security number for Cheryl Conley, the plaintiff herein, rather than the correct information on Cheryl Hunt.

When plaintiff registered her vehicle on April 21, 1992, the sheriff's office was alerted of plaintiff's whereabouts through the LEADS system and, as a consequence, the outstanding warrant on Cheryl Hunt was given to Deputy Doyle of the Clermont County Sheriff's Department on April 25, 1992, so he could serve the plaintiff. Deputy Doyle, using the information received from LEADS, went to plaintiff's address and arrested plaintiff while she was celebrating her son's birthday with family and friends. Plaintiff and her company all protested plaintiff's innocence.

Deputy Doyle took plaintiff to the Clermont County Jail, where plaintiff was subjected to the normal procedures, including being booked, strip searched, and having to shower in front of a female corrections officer. During her stay at the Clermont County Jail, plaintiff states that Officers Singer and Harbottle kept referring to her as "the innocent one." After five hours of being incarcerated, the plaintiff was released when her father posted bond. The charges against plaintiff were subsequently dismissed.

As a result of her arrest and detention based on mistaken identity, the plaintiff asserts six causes of action. The first three causes of action assert claims under Section 1983, Title 42, U.S.Code and allege violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. In her fourth and fifth causes of action, the plaintiff seeks to recover for serious emotional distress.

Finally, in her sixth cause of action, the plaintiff seeks to recover based upon violations of the Ohio Constitution.

■ In order for one to recover for violation of federally protected rights under Section 1983, one must show that the defendant officials engaged in some misconduct that exceeded mere negligence. *Sanders v. English* (C.A.5, 1992), 950 F.2d 1152, 1159. The negligent acts of an official do not amount to deprivation of due process. *Id.,* citing *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662. When an officer arrests someone who claims innocence due to mistaken identity or other error, the officer executing the warrant is not required by the Constitution to independently investigate the arrestee's claim of innocence. *Sanders,* 950 F.2d at 1160, citing *Baker v. McCollan* (1979), 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433.

■ In order to show that a party has been deprived of her liberty without due process of law, one must show noncompliance with the Fourth Amendment's probable cause requirement. In order to show that probable cause was lacking, one must show that the warrant in and of itself was not valid; it is not enough for the plaintiff to allege mistaken identity. *Cooper v. Chester* (E.D.Pa.1992), 810 F.Supp. 618.

■ Plaintiff submits that certain Clermont County officials failed to implement and/or enforce procedures that would prevent instances of mistaken identity from occurring. Even if these officials should have had more safeguards, this failure constitutes at most negligence. No evidence has been presented to indicate that the officials in question were deliberately indifferent to whether identification procedures were adequate and, further, there is no suggestion that this sort of mistake has occurred before within Clermont County. Summary judgment is therefore appropriate with respect to defendants VanCamp and White on Claims 1 through 3.

■ As to the actions of Detective McMillan in providing the incorrect information to the sheriff's department, the court must conclude that reasonable minds could differ as to whether this defendant acted with deliberate indifference. While McMillan testified that he interviewed several individuals to obtain more information on Cheryl Hunt, he did not remember how he actually obtained the information that he quickly supplied to the sheriff's office upon request. Plaintiff has raised an inference that Detective McMillan obtained this information by pulling it off a computer. If in fact he did use this shortcut to meet the warrant clerk's request, such a shortcut was contrary to standard procedure and could be viewed as a deliberate indifference towards innocent parties; such indifference, if found to exist, could expose Detective McMillan to liability under Section 1983.

In light of the foregoing, the court holds that the motion for summary judgment is not well taken insofar as Detective McMillan is concerned.

In the plaintiff's fourth cause of action, she seeks to recover from Singer and Harbottle based upon infliction of emotional distress as a result of these two jail employees' referring to the plaintiff as "the innocent one." Plaintiff cannot recover on the basis of negligent infliction of emotional distress, inasmuch as the defendants herein are immune from liability for negligent acts pursuant to R.C. 2744.03(A)(6). While plaintiff submits that sovereign immunity does not apply in the instant situation due to the fact that defendants have certain duties imposed upon them under R.C. 341.01, the court finds this argument to be unavailing, since liability would have to be expressly imposed by the other statute itself. *Zellman v. Kenston Bd. of Edn.* (1991), 71 Ohio App.3d 287, 593 N.E.2d 392, citing R.C. 2744.02(B)(5). It is presumed that other statutes do not create exceptions to the general rule of sovereign immunity. *Id.* Plaintiff has failed to overcome the presumption that R.C. 341.01 does not state an exception to the sovereign immunity granted in R.C. Chapter 2744.

The plaintiff has not alleged facts sufficient to support a claim for intentional infliction of emotional distress. In order for one to recover on a claim for intentional infliction of emotional distress, one must prove the following:

"(1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community'; (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'" (Citations omitted.) *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 588 N.E.2d 280, at paragraph five of the syllabus.

The results of defendants Singer's and Harbottle's actions were not foreseeable. The remarks made by defendants referring to plaintiff as "the innocent one" were not aimed directly at the plaintiff, and there is no indication that the defendants intended to hurt the plaintiff's feelings in any way. Even assuming *arguendo* that the defendants knew that plaintiff was hearing all their references to "the innocent one," the defendants had no way of knowing that plaintiff was actually innocent and/or that such statements would result in serious emotional distress to the plaintiff. The defendants' statements were likewise not extreme and outrageous. Perhaps the defendants were a bit careless or negligent in their use of sarcasm, but sarcastically calling someone innocent does not go beyond all bounds of human decency. The plaintiff has no viable cause of action against

defendants Singer and Harbottle; therefore, the defendants' motion is well taken as to the fourth cause of action.

■ As a basis for her fifth claim, the plaintiff alleges that she was wrongfully confined and that such confinement resulted in her serious emotional distress. The facts underlying this claim do not point to any intentional acts on the part of defendants; thus, governmental immunity, as discussed *supra*, is applicable, and bars any recovery from defendants on this cause of action.

■ In her sixth cause of action, the plaintiff seeks to recover for alleged violations of the Ohio Constitution. Plaintiff's memorandum in opposition to summary judgment does not address this claim, nor does the amended complaint indicate precisely what provisions of the Ohio Constitution have been violated. It is incumbent upon a party presenting evidence upon a motion for summary judgment to bear the burden of presenting evidence on any issue for which she would bear the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Due to the lack of any supporting evidence on this issue, the court has no alternative but to grant summary judgment on plaintiff's sixth claim.

The plaintiff filed a motion to remove Donald White as attorney for defendants and to have the defendants' motion for summary judgment stricken, asserting that the prosecutor's representation of the other defendants violates certain sections of the Code of Professional Responsibility. The court finds that at this stage in the proceedings, the county prosecutor's representation of all defendants has not prejudiced the positions of the other defendants insofar as questions of law are concerned. Since the court hereby grants summary judgment, except as to defendant McMillan, the court sees no reason why the prosecutor's office cannot continue to present a defense, since there should be no potential conflict in the future.

*Judgment accordingly.*