OPINION
{¶ 1} Plaintiff-appellant, Pamela Mustard, appeals the decision of the Warren County Court of Common Pleas granting defendants-appellees, Timothy O'Reilly Co., LTD., et al., summary judgment in a wrongful termination of employment action. We affirm the decision of the trial court.
 {¶ 2} Appellant was employed at Gallerie Au Chocolate as a candy buyer. Gallerie Au Chocolate decided to relocate its business to Kentucky. Appellant did not want to move with the business, so she began seeking employment closer to home.
 {¶ 3} During her employment with Gallerie Au Chocolate, appellant purchased candy from the Timothy O'Reilly Co. Appellant informed the owner of the Timothy O'Reilly Co., Timothy O'Reilly ("O'Reilly"), that she was leaving Gallerie Au Chocolate. O'Reilly asked appellant if she would consider employment as a sales representative with his company.
 {¶ 4} Appellant and O'Reilly began having telephone conversations regarding the sales representative position. On March 21, 2002, appellant and O'Reilly scheduled a "casual lunch" meeting. After the meeting, O'Reilly scheduled an interview for appellant with his business consultant, Al Tassinari ("Tassinari").
 {¶ 5} Appellant met with Tassinari to outline the duties of a sales representative. He informed her that the position was "not a nine-to-five job." He mentioned that overnight travel might be required. Appellant mentioned that she was a Mary Kay Cosmetics beauty consultant, cheerleading advisor, and room mother at her daughter's school. However, appellant stated that her Mary Kay Cosmetics business would not interfere with her job at O'Reilly Co. Following the interview, appellant and O'Reilly met for dinner and she was offered the sales representative position.
 {¶ 6} On May 1, 2002, appellant and O'Reilly met again to discuss her salary and benefits. At this meeting, appellant stated that she would like to attend the Mary Kay convention for a week in July. O'Reilly told her if it was important she should go.
 {¶ 7} Appellant began work on May 20, 2002. O'Reilly discussed a training schedule for the upcoming weeks with appellant. Appellant informed O'Reilly that she wanted to reschedule some of the dates. Appellant was to train in Akron with Ron McGaffick, however, appellant wanted to postpone the training meeting because her daughter's fourth-grade graduation fell on one of the dates. Appellant also discussed a scheduling conflict with a pizza party at her daughter's school. Furthermore, during lunch that day, appellant told another O'Reilly Co. employee, Pam Feasel ("Feasel"), that she had Mary Kay meetings every Monday.
 {¶ 8} On May 21, 2002, Feasel telephoned appellant at 8:00 a.m. to inform her that she was to meet another O'Reilly Co. employee, Liz Denne ("Denne"), at Kings Island to give her some sample products. Appellant met Denne at the McDonald's near Kings Island and gave her the products. Denne then told appellant that O'Reilly would give her a call.
 {¶ 9} O'Reilly attempted to call appellant four times that day without reaching her. When O'Reilly finally contacted appellant, she told O'Reilly that she had to take her daughter to the emergency room for a broken arm and she was required to turn off her cell phone while in the hospital. At that point, O'Reilly terminated appellant's employment with his company.
 {¶ 10} According to appellant, O'Reilly stated, "we're going to end this before we even get started because we feel you have too many priorities in your life. You're a mom first and we're going to have scheduling conflicts because of it."
 {¶ 11} O'Reilly denies telling appellant that she is "a mom first." O'Reilly maintains that he told appellant, "I'm concerned about the scheduling. Between Mary Kay and your outside activities, I think we should end this before it gets further * * * I'm going to pay you for two weeks and * * * we'll help any way we can."
 {¶ 12} Appellant filed a lawsuit against the Timothy O'Reilly Co. and O'Reilly alleging that she was discriminated against on the basis of her sex and her status as a mother of young children when her employment was terminated. Appellant also alleged that O'Reilly's conduct was outrageous and caused her severe emotional distress.
 {¶ 13} O'Reilly moved for summary judgment on February 18, 2003. On April 8, 2003, the trial court granted O'Reilly's motion for summary judgment dismissing appellant's claims in their entirety. Appellant appeals the decision raising four assignments of error.
 {¶ 14} Assignment of Error No. 1:
 {¶ 15} "The trial court erred in applying the McDonnell Douglas analysis when Plaintiff/Appellant produced direct evidence of discrimination on the basis of her protected status as a mother of young children."
 {¶ 16} Appellant argues she "produced direct evidence of discrimination on the basis of her status as a mother of young children." Appellant argues, "therefore the McDonnell Douglas
[Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817,] analysis need not be undertaken."
 {¶ 17} In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. Perkins v. Lavin (1994), 98 Ohio App.3d 378,381. No special deference is to be afforded the trial court upon a review of an entry of summary judgment, therefore, we review the matter de novo. Pennsylvania Lumbermens Ins. Corp. v.Landmark Elec., Inc. (1996), 110 Ohio App.3d 732, 743.
 {¶ 18} Pursuant to Civ.R. 56(C), summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. State ex. rel.Howard v. Ferreri, 70 Ohio St.3d 587, 589, 1994-Ohio-130.
 {¶ 19} R.C. 4112.02 provides as follows:
 {¶ 20} "It shall be an unlawful discriminatory practice:
 {¶ 21} "(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 22} In cases brought pursuant to R.C. 4112.02 for "disparate treatment," Ohio courts have adopted the three-step formula set forth by the United States Supreme Court inMcDonnell Douglas, 411 U.S. at 802-805, 93 S.Ct. at 1824-1826. Federal case law interpreting Title VII is generally applicable to cases of alleged violations of R.C. Chapter 4112. LittleForest Med. Ctr. of Akron v. Ohio Civ. Rights Comm. (1991),61 Ohio St.3d 607, 609-610, certiorari denied (1992), 503 U.S. 906,112 S.Ct. 1263.
 {¶ 23} Appellant's "direct evidence of discrimination on the basis of her status as a mother of young children" comes from her own deposition. Appellant claims that O'Reilly told her the reason for her termination was the fact that she was "a mom first." However, even if this were true, discrimination based on status as a parent is not actionable under R.C. 4112.02, even under the "sex-plus" rationale. See Phillips v. Martin MariettaCorp. (1971), 400 U.S. 542, 91 S.Ct. 496.
 {¶ 24} Since appellant's "direct evidence" is not actionable under R.C. 4112.02, the trial court applied the analytical framework in McDonnell Douglas to determine whether appellant suffered from disparate treatment in the workplace. According toMcDonnell Douglas, the plaintiff must first prove by a preponderance of the evidence a prima facie case of disparate treatment. The elements appellant must prove by a preponderance of the evidence in order to establish a prima facie case are (1) appellant is in a protected class, (2) appellant suffered adverse employment action, (3) appellant was qualified for the position she held, (4) comparable, nonprotected persons were treated more favorably. See McDonnell Douglas, 411 U.S. at 802-805,93 S.Ct. at 1824-1826; Sutherland v. Nationwide Gen. Ins. Co. (1994),96 Ohio App.3d 793, 801, quoting Mitchell v. Toledo Hosp. (C.A. 6, 1992), 964 F.2d 577, 582-583.
 {¶ 25} On an appeal from the granting of summary judgment, our first inquiry is whether the successful movant met its burden under Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, "to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." We find that O'Reilly has fulfilled his initial burden underDresher to point to Civ.R. 56 evidence which demonstrates the absence of evidence supporting appellant's claim that comparable, nonprotected persons were treated more favorably.
 {¶ 26} On the first day of her employment, appellant asked to rearrange her scheduled training in order to attend her daughter's fourth-grade graduation. Appellant also asked for time off to attend a week-long Mary Kay convention and for a pizza party at her daughter's school. On her second day of employment, appellant was unable to be reached because she was in an emergency room due to her daughter's broken arm and was required to turn off her cell phone. O'Reilly stated appellant was terminated due to her scheduling conflicts.
 {¶ 27} Appellant did not prove by a preponderance of the evidence a prima facie case of disparate treatment. Specifically, appellant failed to demonstrate that comparable, nonprotected persons were treated more favorably or that her termination for scheduling conflicts was merely pretextual. Therefore, the first assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "The trial court erred in finding that plaintiff/Appellant is not a member of the protected subclass of females with children."
 {¶ 30} Appellant argues that she is a "member of the protected subclass of females with young children." Furthermore, appellant maintains that she has "demonstrated that [O'Reilly] discriminated against her on the basis of her exercise of the fundamental right to bear and raise children."
 {¶ 31} In its decision, the trial court noted that "even assuming arguendo that [appellant's] role as a mother played a part in her dismissal, being a parent is not a protected classification." Discrimination against a parent is not actionable under R.C. 4112.02, even under the "sex-plus" rationale. See Phillips v. Martin Marietta Corp. (1971),400 U.S. 542, 91 S.Ct. 496.
 {¶ 32} Consequently, the trial court correctly determined that appellant was not a member of a protected subclass of females with children. The second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "The trial court erred in concluding that a subclass of similarly situated males was necessary to establish a prima facie case of discrimination."
 {¶ 35} Appellant argues that "the purpose of allowing the `sex-plus' cause of action is to close the loophole that would permit an employer to avoid liability by hiring another female, not of that subclass." Therefore, appellant maintains that a subclass of similarly situated males is not necessary to establish a prima facie case.
 {¶ 36} Precisely this question was recently before the Tenth Circuit in Coleman v. B-G Maintenance Management of Colorado,Inc. (C.A. 10, 1997), 108 F.3d 1199. Coleman aptly states that "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender."Coleman, 108 F.3d at 1203. And the reason is plain: "[W]hen one proceeds to cancel out the common characteristics of the two classes being compared ([e.g.,] married men and married women), as one would do in solving an algebraic equation, the canceled-out element proves to be that of married status, and sex remains the only operative factor in the equation."
 {¶ 37} On the other hand, if there is no comparable subclass of members of the opposite gender, the requisite comparison to the opposite gender is impossible. Martinez v. N.B.C., Inc.
(S.D.N.Y. 1999), 49 F. Supp.2d 305, 310. In other words, in a "sex-plus" or "gender-plus" case, "the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men." Coleman, 108 F.3d at 1203. Absent such a subclass, a plaintiff cannot establish sex discrimination. Id.
 {¶ 38} Therefore, the trial court correctly determined that a subclass of similarly situated males was necessary to establish a prima facia case of "sex-plus" discrimination. No similarly situated male subclass existed at O'Reilly Co. Thus, appellant was unable to demonstrate that she was discriminated against solely because of her gender. Consequently, the third assignment of error is overruled.
 {¶ 39} Assignment of Error No. 4:
 {¶ 40} "The trial court erred in weighing the evidence and substituting its judgment for that of the jury when it dismissed the intentional infliction of emotional distress claim."
 {¶ 41} The Supreme Court of Ohio has recognized the common law tort of intentional infliction of emotional distress, holding that, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress * * *." Yeagerv. Local Union 20, Teamsters, Chauffeurs, Warehousemen Helpersof Am. (1983), 6 Ohio St.3d 369, syllabus.
 {¶ 42} To maintain a claim for intentional infliction of emotional distress, the following elements must be proved: (1) the defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychic injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable man could be expected to endure. Burkes v. Stidham (1995), 107 Ohio App.3d 363, 375, citing Ashcroft v. Mt. Sinai Med. Ctr. (1990),68 Ohio App.3d 359, 366.
 {¶ 43} In order to constitute serious emotional distress for the purposes of an intentional infliction of emotional distress claim, the injury that is suffered must surpass upset or hurt feelings, and must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Davis v.Billow Co. Falls Chapel (1991), 81 Ohio App.3d 203, 207.
 {¶ 44} Upon a review of the record, this court does not find that appellant has established a claim for intentional infliction of emotional distress. Specifically, appellant failed to demonstrate that O'Reilly's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community. SeeBurkes, 107 Ohio App.3d at 375, citing Ashcroft,68 Ohio App.3d at 366.
 {¶ 45} Appellant failed to present any evidence that the behavior of her employer was outrageous or extreme. O'Reilly's acts of discharging appellant on her second day of employment for her scheduling conflicts, giving her two weeks severance pay, and offering to help her find other employment are simply not extreme and outrageous. The fourth assignment of error is overruled.
 {¶ 46} Judgment affirmed.
Valen, P.J., and Walsh, J., concur.