OPINION
{¶ 1} Appellant Erich Jackson appeals the decision of the Stark County Court of Common Pleas, which granted summary judgment in a sexual harassment lawsuit in favor of Appellee Saturn of Chapel Hill, Inc., appellant's former employer. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant began his employment as a customer service trainee ("CST") with Appellee Saturn of Chapel Hill, dba Saturn of Belden Village, on October 15, 2001. Appellant, age sixteen at the time of hiring, was being home-schooled and was able to work on a full-time basis. He continued as a CST until he left employment on September 9, 2002. His job duties included car washing, service area cleaning, running errands, and providing shuttle rides to customers. Throughout his time of employment, appellant was under the direct supervision of Jason Chamberlain, the senior CST at the Belden Village dealership. Chamberlain, however, did not have authority to hire or fire employees.
 {¶ 3} On March 11, 2004, appellant filed a complaint in the Stark County Court of Common Pleas, naming both Appellee Saturn of Chapel Hill and Chamberlain as defendants. The complaint alleged, inter alia, that Chamberlain had engaged in repeated acts of groping, simulated sodomy, verbal harassment, and physical assaults against appellant during his time of employment. On June 10, 2004,[1] the trial court entered a default judgment against Chamberlain individually for his failure to appear in the action. On December 10, 2004 appellee filed its motion for summary judgment. On February 10, 2005, the court granted summary judgment in favor of appellee.
 {¶ 4} Appellant filed a notice of appeal on March 7, 2005. He herein raises the following sole Assignment of Error:
 {¶ 5} "I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AGAINST APPELLANT ERICH JACKSON."
 I. {¶ 6} In his sole Assignment of Error, appellant argues the trial court erred in granting summary judgment against him. We disagree.
 Standard of Review {¶ 7} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ. R. 56 which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
 {¶ 8} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.
 "Hostile Work Environment" Sexual Harassment Claim {¶ 9} In Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, the Ohio Supreme Court held that in order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. Id. at paragraph two of the syllabus.
 {¶ 10} While both appellant and appellee in this matter commendably articulate their opposing positions on the Hampel requirements, even if we were to initially conclude that the hostile-environment sexual harassment claim should survive summary judgment, we must nonetheless address the United States Supreme Court's recitation of the affirmative defense available to defending employers in such cases. This defense contains two necessary elements: First, "* * * that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and "* * * that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher v. City ofBoca Raton (1998), 524 U.S. 775, 807. Furthermore, "* * * while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." Id. at 807-808.
 {¶ 11} In the case sub judice, Appellee Saturn of Chapel Hill required appellant, as a new hire, to attend pre-employment training sessions, including a videotape-based sexual harassment class on October 22, 2001. (Jackson Depo. at 29-30, 73). Appellant also signed for receipt of his employee handbook, which outlined procedures for reporting sexual harassment. (Id. at 31). The pertinent handbook section, captioned"Harassment Prohibited" reads as follows:
 {¶ 12} "Through responsible management, the Ron Marhofer Auto Family will endeavor to prevent sexual harassment from occurring in our work-place. Submission to unwelcome sexual advances, requests for sexual favors and other verbal and physical conduct of a sexual nature is not a condition of employment here. Neither submission to or (sic) rejection of such conduct will be used as a basis for employment decisions. Such conduct can unreasonably interfere with work performance and create an intimidating, hostile and offensive working environment. It will not be tolerated. If you feel you have been sexually harassed, report itimmediately to Ron Marhofer for appropriate action. All types of harassment prohibited."
 {¶ 13} Appellant testified his last day of employment was Monday, September 9, 2002. (Jackson Depo. at 81). Appellant agreed that appellee did not fire him, but rather he simply stopped coming to work. (Id. at 61). Shortly beforehand, in August 2002, appellant took part in a periodic interview with appellee's human resources department, at which time he admittedly raised no specific allegations whatsoever as to sexual harassment at his workplace. (Id. at 35-37). While he generically indicated that Chamberlain sometimes hurt his feelings, he rated his job satisfaction as a "nine" on a scale of ten. (Id.)
 {¶ 14} The Sunday evening before appellant stopped reporting to work, appellant attended a church service following which he felt compelled to deal with his situation at work. He thereupon told his mother, Joyce Stevenson, about his problems with Chamberlain; as a result, Stevenson telephoned Ron Marhofer, the owner of the dealership. (Stevenson Depo. at 24-25). Marhofer proposed transferring appellant to appellee's Cuyahoga Falls store, a traveling distance of about thirty minutes. Appellant, who lived much closer to the Belden Village store, and his mother would not agree to such a change. Appellant thus did not came back again to work. At some point after September 9th, appellant went to pick up his last check, at which time he completed an exit interview form stating he was leaving because "I felt like I was being sexually harassed." (Jackson Depo. at 81).
 {¶ 15} Upon review of the record in a light most favorable to appellant, we find reasonable minds could only conclude that appellee exercised reasonable care in preventing sexual harassment at the dealership via its training and reporting policies, and that appellant, albeit a minor at the time, unreasonably refused to take corrective measures by not reporting his complaints as per the handbook prior to his walk-off and thereafter declining, via his mother, the lateral transfer opportunity. Faragher, supra. Cf. also, Harlston v. McDonnell DouglasCorp., 37 F.3d 379, 382 (C.A.8 1994) (holding that plaintiff's reassignment to a more inconvenient job was insufficient to establish prima facie case of discrimination).
 {¶ 16} Accordingly, we hold summary judgment was properly granted on this basis in favor of Appellee Saturn of Chapel Hill.
 "Quid Pro Quo" Sexual Harassment Claim {¶ 17} In order to sustain a quid pro quo claim of sexual harassment, a plaintiff must demonstrate (1) that the employee was a member of a protected class, (2) that the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, (3) that the harassment complained of was based on gender, and (4) that the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment. Kinnison v. Advance Stores Co., Inc., Richland App. No. 02CA73, 2003-Ohio-3387, citing Schmitz v. Bob Evans Farms, Inc.
(1997), 120 Ohio App.3d 264, 269, 697 N.E.2d 1037. A tangible employment action taken by a supervisor becomes for Title VII purposes the act of the employer. Burlington Industries, Inc. v. Ellerth (1998),524 U.S. 742, 762.
 {¶ 18} Appellant testified that Chamberlain subjected him to such acts as grabbing appellant's genitals over his clothing or placing his crotch against appellant's head while appellant was crouched down doing cleaning work and other duties. However, assuming, arguendo, appellant had established the first three of the Schmitz criteria, the record before us contains a paucity of support for the fourth criterion. In other words, even if Chamberlain's actions towards appellant were considered gender-based sexual advances or requests, submission thereto was not a condition for benefits nor did appellant's refusal lead to a tangible job detriment. During the roughly eleven months of employment, appellant was not disciplined, nor was he demoted in position or given a cut in pay or hours. The strongest example submitted by appellant is the allegation that Chamberlain threatened if appellant ever opened his mouth about his treatment, Chamberlain would "take him behind the garbage bin" in the parking lot. (Jackson Depo. at 8). While reasonable jurors might very well find such a statement to be bullying on Chamberlain's part, we again note that such threats would not reach the level of a condition for benefits or be indicative of a tangible job detriment on appellee's part.
 {¶ 19} We therefore hold summary judgment was properly granted on this basis in favor of appellee.
 Claim of Wrongful Discharge {¶ 20} We next address appellant's argument that his claim of wrongful discharge should have survived summary judgment. This case clearly presents a "termination over transfer" decision by appellant. As such, appellant must show that his decision was involuntary, i.e., that he was constructively discharged. See Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 588, citing Clowes v. Allegheny Valley Hosp. (C.A.3, 1993), 991 F.2d 1159, 1160-1161. "Courts generally apply an objective test in determining when an employee was constructively discharged, viz., whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." Mauzy, supra, at 5885-89 (citations omitted).
 {¶ 21} As noted previously, when approached by appellant's mother, Marhofer decided to allow appellant to transfer to the Cuyahoga Falls store. Appellant's mother refused to permit the transfer, due to the longer commute. In addition, appellant had expressed concern that Chamberlain, who remained at the Belden Village store, nonetheless lived in the Cuyahoga Falls area, where he might again encounter appellant.
 {¶ 22} "A claim of constructive discharge is in essence a claim that the employer's conduct was so egregious that the employee was `forced * * * to sever the employment relationship involuntarily.'" Risch v.Friendly's Ice Cream Corp. (1999), 136 Ohio App.3d 109, 112, citingPowers v. Springfield City Schools (June 26, 1998), Clark App. No. 98-CA-10. Upon review of the record, we find reasonable minds would not conclude that appellee's conduct, via Marhofer, in seeking to remedy appellant's problems with Chamberlain by offering appellant a job transfer, constituted egregious behavior sufficient to support a constructive discharge claim.
 Claim of Infliction of Emotional Distress {¶ 23} To state a claim for intentional infliction of emotional distress, a plaintiff must be able to establish that: (1) the defendant either intended to cause emotional distress, or knew or should have known that its actions would result in serious emotional distress; (2) defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; (3) defendant's actions proximately caused injury to plaintiff; and (4) the mental anguish plaintiff suffered is serious and of such a nature that no reasonable person could be expected to endure. Ashcroft v. Mt. Sinai Medical Center (1990), 68 Ohio App.3d 359,588 N.E.2d 280. Additionally, "[e]xpert medical testimony is not indispensable to a claim of serious emotional distress. * * * More particularly, as an alternative and in lieu of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff as to any `marked changes in the emotional or habitual makeup' of the plaintiff following a defendant's allegedly culpable conduct." Powell v. Grant Med. Ctr. (2002), 148 Ohio App.3d 1, 6,771 N.E.2d 874 (citations omitted).
 {¶ 24} Appellant argues that he sought out pastoral counseling at his church several times per week after he left appellee's employ, that he suffered an "emotional breakdown" following the aforementioned church service of September 2002, and that he broke down at one point during his deposition. Jackson Depo. at 34. Despite such evidence of mental anguish, however, we find reasonable jurors would not conclude that appellee-employer's actions, as distinguished from Chamberlain's alleged conduct, rose to the level of "extreme and outrageous" per Ashcroft.
Instead, the record is clear that Marhofer, once notified of the situation by appellant's mother, quickly proposed a reasonable remedy in accordance with his dealership's stated prohibition against harassment in the workplace. Summary judgment in favor of appellee was therefore proper as to the infliction of emotional distress claim.
 Vicarious Liability {¶ 25} We next turn to appellant's contention that his claim for vicarious assault and battery liability on the part of appellee-employer should have survived summary judgment.
 {¶ 26} "It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be `calculated to facilitate or promote the business for which the servant was employed * * *.'" Byrd v. Faber (1991), 57 Ohio St.3d 56, 58, citing Little Miami RR. Co. v. Wetmore (1869), 19 Ohio St. 110, 132;Taylor v. Doctor's Hosp. (1985), 21 Ohio App.3d 154.
 {¶ 27} In the case sub judice, even if the acts of Chamberlain went beyond appellee's euphemistic label of "mutual horseplay," the record does not support the proposition that such allegedly tortious conduct in any way facilitated or promoted appellee's main enterprise of selling and servicing automobiles. Accordingly, upon review, we conclude summary judgment was properly granted in favor of appellee in this regard.
 Negligent Supervision {¶ 28} In order to recover for negligent supervision, a plaintiff must show an employer breached its duty to act reasonably and prudently in supervising its employees. Mann v. Genoa Township, Delaware App. No. 01CAE03011, 2002-Ohio-727. In Retterer v. Whirlpool Corp. (1996),111 Ohio App.3d 847, 677 N.E.2d 417, the Third District Court addressed a negligent supervision claim brought against an employer by a plaintiff employee based on the alleged conduct of co-workers, rejecting the argument that such a claim should fall within the confines of the Workers' Compensation Act. Id. at 861.
 {¶ 29} Appellant herein maintains that Chamberlain's alleged propensities were known by appellant's co-workers, and that Chamberlain had further been reprimanded earlier for inappropriate material on his computer. Mollica Depo. at 11-13. However, as per our earlier discussion pertaining to the issue of hostile environment, appellant failed to timely bring his problems with Chamberlain to appellee's attention through the established channels outlined in the employee handbook, and appellee otherwise maintained a published policy to prevent harassment in the workplace. Upon review, we find summary judgment was proper concerning the negligent supervision claim as well.
 Punitive Damages {¶ 30} Punitive damages may be awarded if a defendant's conduct demonstrates "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Malonev. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 445-446; Shawv. Thomas (Nov. 2, 2000), Franklin App. No. 99AP-1291. However, an award of punitive damages requires the finding of some compensatory damages.Malone, supra; Shimola v. Nationwide Ins. Co. (1986), 25 Ohio St.3d 84. Having concluded that summary judgment was properly granted to appellee regarding all of the aforesaid claims, we find this issue moot.
 {¶ 31} Appellant's sole Assignment of Error is therefore overruled.
 {¶ 32} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J., Boggins, P.J., concurs.
Gwin, J., dissents.
[1] According to appellee's briefs, the trial court has postponed a damages hearing, as to Chamberlain individually, pending the present appeal.