OPINION *Page 2 
{¶ 1} Appellant Kelley McBride appeals the decision of the Court of Common Pleas, Licking County, which granted summary judgment in favor of Appellees William and Alice McBride in a dispute over a sale of corporate stock. The relevant facts leading to this appeal are as follows.
 {¶ 2} In 1972, Appellees William and Alice McBride incorporated their business, Sub-Aquatics, Inc. Appellees' son, Appellant Kelley McBride, began working for Sub-Aquatics that same year, eventually becoming President and General Manager.
 {¶ 3} In 2002, appellees considered selling the company. There were 756 shares of stock in Sub-Aquatics, Inc., of which 456, a 60 percent majority, were owned by appellees. Mark Schuster, the company's computer consultant, expressed an interest in purchasing appellees' majority shares in the company. However, appellees and Schuster could not agree on a per share price, following Shuster's refusal to pay the asking price of $4,000.00 per share.
 {¶ 4} Appellees then entered into negotiations with appellant. Via an email dated December 31, 2002, appellant offered to pay $3,000.00 per share. Less than an hour later, appellees responded, refusing appellant's offer.
 {¶ 5} Several years later, in March 2007, appellees and Schuster engaged in further negotiations, and agreed to a per share price of $4,900.00. Appellant, who was also a member of the Board of Directors for Sub-Aquatics, Inc., approved the purchase by Schuster. Appellees' shares were thereafter sold to Schuster.
 {¶ 6} On August 20, 2007, appellant filed a complaint against appellees, claiming breach of contract, promissory estoppel, and intentional infliction of emotional *Page 3 
distress. On May 23, 2008, appellant filed an amended complaint, dropping the breach of contract claim. Said May 23, 2008 amended complaint included the following claim for promissory estoppel:
 {¶ 7} "6. On or about December 31, 2002, the Defendants, while majority shareholders of Sub Aquatics, Inc., made an unambiguous promise to Plaintiff for the transfer of Sub Aquatics, Inc. stock. Written evidence of the agreement attached hereto as Exhibit `A'.
 {¶ 8} "7. The Defendants made a clear and unambiguous promise to transfer stock with the reasonable expectation that it would induce action or forbearance on the part of Plaintiff.
 {¶ 9} "8. Plaintiff, to his detriment, reasonably and foreseeably relied upon the promise of Defendants and took action and/or forbore action accordingly."
 {¶ 10} In the meantime, appellees had filed a motion for summary judgment on April 23, 2008. By judgment entry filed June 6, 2008, the trial court granted appellees' motion for summary judgment.
 {¶ 11} On July 3, 2008, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:
 {¶ 12} "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLANTS' (SIC) MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF PROMISSORY ESTOPPEL.
 {¶ 13} "THE LOWER COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED APPELLANTS' (SIC) MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS." *Page 4 
 I. {¶ 14} In his First Assignment of Error, appellant argues the trial court erred in granting summary judgment to appellees concerning his claim of promissory estoppel. We disagree.
 {¶ 15} As an appellate court reviewing summary judgment issues, we must stand in the shoes of the trial court and conduct our review on the same standard and evidence as the trial court. Porter v. Ward, Richland App. No. 07 CA 33, 2007-Ohio-5301, ¶ 34, citing Smiddy v. The WeddingParty, Inc. (1987), 30 Ohio St.3d 35, 506 N.E.2d 212.
 {¶ 16} Civ. R. 56(C) provides, in pertinent part:
 {¶ 17} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 {¶ 18} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a *Page 5 
genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall,77 Ohio St.3d 421, 429, 1997-Ohio-259, citing Dresher v. Burt, (1996),75 Ohio St.3d 280.
 {¶ 19} Promissory estoppel is an equitable doctrine for preventing the harm resulting from reasonable reliance upon false representations.GGJ, Inc. v. Tuscarawas Cty. Bd. of Commrs., Tuscarawas App. No. 2005AP070047, 2006-Ohio-2527, ¶ 11, citing Karnes v. Doctors Hosp.
(1990), 51 Ohio St.3d 139, 142, 555 N.E.2d 280. The party asserting promissory estoppel bears the burden of proving, by clear and convincing evidence, all of the elements of the claim. In re Estate of Popov, Lawrence App. No. 02CA26, 2003-Ohio-4556, ¶ 30.
 {¶ 20} The elements necessary to establish a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party claiming estoppel must be injured by the reliance. Schepflin v. Sprint-United Telephone ofOhio (April 29, 1997), Richland App. No. 96-CA-62-2, citing Stull v.Combustion Engineering, Inc. (1991), 72 Ohio App.3d 553, 557.
 {¶ 21} The record in the case sub judice reveals two December 31, 2002 e-mails between appellant and appellees regarding potential sale of the Sub-Aquatics stock. In the first one, sent at 11:12 AM by appellant to appellees, appellant offered to purchase *Page 6 
appellees' shares for $3,000.00 per share. The second one, sent at 12:04 p.m. from appellees to appellant, stated the following:
 {¶ 22} "Kelley:
 {¶ 23} "Your $3000 per share offer is a far more reasonable offer, and we thank you for it.
 {¶ 24} "However, we are not prepared to `sell out' for so much less than the Buy/Sell Agreement price. We would certainly not have accepted this offer from Mark, even after our loss last year. After all, if the Company were to be liquidated, we would come out far better than this. . . .
 {¶ 25} "If we can get/keep the Company profitable again, and you can be patient, we won't be inclined to sell out, and you can look forward to eventual plurality (50%+), or maybe someday majority (66%+) ownership.
 {¶ 26} "Thanks again!
 {¶ 27} "Mom Dad"
 {¶ 28} Appellant argues the two e-mails, coupled with his own action of staying with the company, making it profitable, and foregoing a change of jobs, creates an issue of fact as to the elements of promissory estoppel.
 {¶ 29} Appellees' most persuasive rebuttal to appellant's claim is the fact that appellant, as a member of the Board of Directors, consented to the sale of the shares to Mr. Schuster on April 17, 2007. Appellees argue this consent was a waiver of any possible claims arising out of the December 31, 2002 emails. The trial court likewise concluded that appellant, as a member of the corporation's board, "ratified the sale of [appellees'] shares and made no objection or offer of his own to purchase [appellees'] *Page 7 
shares when [appellees] announced their intent to sell to Mr. Schuster in 2007." Summary Judgment Entry, June 6, 2008, at 3.
 {¶ 30} The record supports the trial court's finding that appellant did agree to the sale of appellees' shares of stock to Schuster under the offered terms. Although he presently claims he did not want the sale to go through, but that he could not have prevented the sale, he nonetheless agreed to it. As the trial court recognized in the judgment entry under appeal, appellant made no objections. Appellant's actions and inactions in responding to the sale to Schuster clearly would not allow reasonable jurors to find that was truly relying on the email "offer" from appellees.
 {¶ 31} Appellant does not deny he approved the sale by signing the board approval form. He nonetheless argues that he was forced to choose between signing the board approval form or risk losing his job after the transaction. We find this rationale fails for many reasons. While appellant may have faced a difficult choice, it cannot be categorized as coercion, undue influence, or such conduct as to render his approval involuntary. Furthermore, this "pressure" to sign came not from appellees (the parties alleged to have made the promises upon which he allegedly relied), but were made by a third-party purchaser. These acts cannot be used as a defense to waiver under these circumstances.
 {¶ 32} Moreover, appellant had various legal alternatives to consenting to the sale. He could have, for example, sued appellees to enforce the alleged agreement he had with them, and sought an injunction to prevent the sale to Schuster. His apparent decision that the case wasn't strong enough to risk his future employment with the company does not justify his consent followed by a claim of promissory estoppel against *Page 8 
appellees. Having made the decision in that fashion, equity demands that he be bound by it.
 {¶ 33} Accordingly, upon review, we find the trial court did not err in granting summary judgment to appellees on appellant's claim of promissory estoppel.
 {¶ 34} Appellant's First Assignment of Error is overruled.
 II {¶ 35} Appellant claims the trial court erred in granting summary judgment to appellees on his claim of intentional infliction of emotional distress. We disagree.
 {¶ 36} To state a claim for intentional infliction of emotional distress, a plaintiff must be able to establish that: (1) the defendant either intended to cause emotional distress, or knew or should have known that its actions would result in serious emotional distress; (2) defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; (3) defendant's actions proximately caused injury to plaintiff; and (4) the mental anguish plaintiff suffered is serious and of such a nature that no reasonable person could be expected to endure. Ashcroft v. Mt. Sinai Medical Center (1990),68 Ohio App.3d 359, 588 N.E.2d 280.
 {¶ 37} Despite appellant's assertions in the complaint and in his affidavit that he suffered severe emotional distress and has suffered from a physical impairment resulting from such emotional distress, we find reasonable jurors would not conclude that appellees' actions in the stock transaction rose to the level of "extreme and outrageous" perAshcroft. Cf. Hokes v. Ford Motor Company, Summit App. Nos. 22502, 22577, 2005-Ohio-5945, ¶ 30. *Page 9 
 {¶ 38} Upon review, we find the trial court did not err in granting summary judgment to appellees on appellant's claim of intentional infliction of emotional distress.
 {¶ 39} Appellant's Second Assignment of Error is overruled.
 {¶ 40} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Licking County, Ohio, is affirmed.
Wise, J., and Gwin, J., concurs.
Farmer, P. J., dissents. *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed.
Costs assessed to appellant. *Page 10