SOCIETY BANK, N.A., Appellee,

v.

KELLAR, Appellant.

[Cite as *Society Bank, N.A. v. Kellar* (1989), 63 Ohio App.3d 583.]

Court of Appeals of Ohio,
Montgomery County.

No. CA 11251.

Decided May 16, 1989.

584

*Altick & Corwin* and *Thomas R. Noland; Freund, Freeze & Arnold, Neil F. Freund* and *Shauna K. McSherry,* for appellee.

*Susan M. Kellar, pro se.*

WOLFF, Presiding Judge.

Susan Kellar appeals from a Montgomery County Court of Common Pleas summary judgment in favor of Society National Bank ("Society"). Society filed a complaint against Kellar claiming she had defaulted on a note. Later, Kellar filed a counterclaim alleging lack of consideration, fraud, usury, harassment, slander, and libel. Kellar's counterclaim was dismissed with prejudice and she was ordered to pay $18,462.34 plus interest at the rate of 9.9 percent per year and to deliver the automobile involved in the transaction to Society.

On September 11, 1987, Kellar executed and delivered to Society an Installment Loan Note and Security Agreement in the original amount of $23,148.48. The purpose of the loan was to purchase a 1987 Buick Regal Grand National automobile, Serial No. IGHG51179HP449530. She assigned the car as collateral for the note. Shortly thereafter, Kellar ceased making monthly payments.

Society mailed Kellar two letters stating her payoff balance. As of October 15, 1987, Kellar's balance on the note was $19,226.25. As of October 23, 1987, the payoff balance was $19,297.87. The payoff amounts were requested by the Kellars so they could pay off the loan.

By letter dated December 3, 1987, with a certified mail return card postmarked December 8, 1987, Society received a "certified draft" for $19,300 drawn on the International Credit Exchange in Acapulco, Mexico.

In the course of normal business, Society forwarded the instrument to Lisa Pockar, International Operations, Society Bank, Cleveland, Ohio. Society was then notified on January 8, 1988, that the Kellar draft had been returned unpaid and was not deliverable at the drawee's address because the drawee, International Credit Exchange in Acapulco, GRO, Mexico, did not exist.

On March 18, 1988, Banco Nacional De Mexico, Mexico City, notified Society, as a member of the Society for Worldwide International Financial Telecommunications ("SWIFT"), of fraudulent certified drafts issued by International Credit Exchange. The broadcast noted that the aforementioned

institutions, which included International Credit Exchange, were unknown in Mexico and payment should be refused. Society then filed suit against Kellar for default.

On appeal, Kellar advances three assignments of error:

"1. The trial court erred in granting summary judgment when genuine issues of material fact exist and were not addressed.

"2. The trial court denied appellant due process by suppressing discovery which would enable appellant to prove her counterclaim.

"3. The court erred in refusing to grant defendant a jury trial."

## I

In the first assignment of error Kellar argues that summary judgment was precluded because issues of fact existed with regard to both the complaint and the counterclaim. Regarding Society's claim for money, Kellar contends that there were material issues of fact concerning Society's proper presentment of the draft.

Society, however, did not concede that the draft was a negotiable instrument. Society stated that the draft was *"presented* as a negotiable instrument." As the trial court correctly found, the draft issued by International Credit Exchange was not a negotiable instrument.

R.C. 1303.03 defines the requirements for negotiability of an instrument, in pertinent part, as follows:

"(A) Any writing to be a negotiable instrument within sections 1303.01 to 1303.78, inclusive, of the Revised Code, must:

"(1) be signed by the maker or drawer; and

"(2) contain an unconditional promise or order to pay a sum certain in *money* and no other promise, order, obligation, or power given by the maker or drawer except as authorized by sections 1303.01 to 1303.78, inclusive, of the Revised Code[.]" (Emphasis added.)

"Money" is a medium of exchange "authorized or adopted by a domestic or foreign government as part of its currency." R.C. 1301.01(X). Currency is not credit or property, but is gold, silver or bank notes. *Swetland v. Creigh* (1846), 15 Ohio 118, 121–122 (a sum of money payable in bank notes is negotiable); *Byington v. Geddings* (1826), 2 Ohio 227 (a note payable in cattle is not negotiable); *White v. Richmond* (1847), 16 Ohio 5, 7 (gold, silver and state bank notes are negotiable).

The negotiability of an instrument is to be determined by what appears on the face of the instrument alone. Official Comment No. 5 to UCC 3–119

(R.C. 1303.18). The certified draft sent to Society by Kellar reads on its face as follows:

"This draft is redeemable in current funds (*credit*) when presented to the drawee at its usual place of business." (Emphasis added.)

The face of the certified draft indicates that it is not a negotiable instrument. It is not payable in money but in credit. Since the instrument is not payable in money, it is not negotiable. Further, if the instrument is not negotiable, Society need not accept it as payment. Based on the foregoing, the trial court was correct in concluding that the "certified draft" was not a negotiable instrument, and that Society was entitled to summary judgment on its complaint.

Accordingly, any error the trial court might have made as to the sufficiency of Society's evidence as to presentment and dishonor is harmless.

Society deposed Kellar and used her deposition testimony in support of its motion for summary judgment on her counterclaim.

■ The first contention in the counterclaim is that Society failed to provide consideration for the original installment note.

The purpose of the loan was to finance an automobile purchase. Kellar used the funds to obtain a 1987 Buick Grand National automobile. Kellar, in her deposition, stated as follows:

"Q. To purchase the car when you signed this note, did you receive cash or were the funds transferred to the dealership directly?

"A. Transferred.

"Q. To the dealership?

"A. I would say so.

"Q. What kind of car did you obtain?

"A. A Buick Grand National."

There was consideration for the loan. Kellar obtained title to a 1987 Buick Grand National even though she never directly received the borrowed money. Kellar's possession of the car and title belies her allegation of lack of consideration. She presented no competent evidence to support that allegation.

■ Kellar also alleged that Society falsely represented to her that it was lending her money and that Society knew these representations were false when it made them.

This allegation is absurd. Because of the loan she was able to acquire an automobile that cost money. Society loaned her money, regardless of whether

she ever possessed it, because she could not have bought the car if she did not have the money.

■ Kellar's deposition testimony also refuted her accusation as to being wrongfully harassed, annoyed, and threatened. In *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, the Supreme Court held that a creditor has the right to take reasonable action to pursue the debtor and encourage payment. The court in *Housh* found that it was not reasonable for the creditor to call the debtor six to eight times a day, as late as 11:45 p.m., or three times within fifteen minutes at his place of employment.

The facts in this case, elicited from Kellar herself, establish as a matter of law that Society acted reasonably. Society called Kellar one time at work. At Kellar's request, Society stopped calling her at work. Society did call Kellar at home, but Kellar did not ask Society to stop. Kellar stated that the phone calls were not abusive in nature, and that she did not fear for her safety or welfare.

■ Kellar, when asked to do so, could not support her allegations of libel and slander. Kellar agreed that Society had said nothing about her. With regard to libel, Kellar was concerned about her credit rating. However, Kellar did not say that she had received a negative credit rating, and no evidence was submitted to indicate that Kellar had actually suffered a negative credit rating. Even if the credit bureau did have a report that Kellar had defaulted on the loan, such a report would not constitute libel.

■ Truth is a complete defense to actions for libel or slander. *Pease Co. v. Huntington Natl. Bank* (1985), 24 Ohio App.3d 227, 24 OBR 437, 495 N.E.2d 45. Even had Kellar offered evidence that Society had written a negative credit report, the truth of the statement would be a defense. Kellar had defaulted on the loan. Consequently, there would be no basis, as a matter of law, for Society to be guilty of libel.

■ Finally, Kellar claimed that the interest rate was usurious. Kellar signed the Installment Loan Disclosure and SEC Variable Rate Agreement. The interest rate on the note was 9.9 percent per year, with further calculations to be based on the three-month moving average of United States treasury bills. Pursuant to R.C. 1107.26(C), 1107.261, and 1107.27(D), this interest rate is not usurious as a matter of law.

The trial court was correct in granting summary judgment in favor of Society. Kellar's first assignment of error is overruled.

## II

■ In the second assignment of error, Kellar contends that she was denied due process because the trial court withheld discovery by granting summary judgment.

Kellar filed interrogatories on August 10, 1988. Society filed its motion for summary judgment and its motion for a protective order on September 7, 1988. Kellar did not file a motion to compel discovery. Nor did she move for a continuance, supported by affidavits, demonstrating that facts essential to justify opposition to summary judgment could be presented.

Civ.R. 56(F) provides that a continuance for discovery may be granted if a party files an affidavit demonstrating that facts essential to justify opposition to summary judgment cannot be presented. There must be a factual basis stated and reasons given why the party cannot present facts essential to his opposition to the motion.

Under the circumstances of this case, the trial court was not required to defer its ruling on Society's motion for summary judgment. Kellar's second assignment of error is overruled.

## III

■ Kellar's third assignment of error contends that the trial court erred in refusing to grant her a jury trial by referring the case to arbitration. Loc.R. 2.53 A of the Court of Common Pleas of Montgomery County, General Division, provides that:

"Any judge * * * may at any time by a general entry order any case to be heard and decided by the Board of Arbitration, * * * provided the amount actually in controversy (exclusive of interest and cost) as determined by the assigned judge does not exceed $25,000 per case. * * * "

Loc.R. 2.53 A gives a judge discretion to order arbitration where he determines the amount in controversy is less than $25,000. Society's claim was $18,462.34, exclusive of interest. The trial court was not required to take Kellar's alleged damages at face value.

Even had the trial court erred in ordering arbitration, Kellar was not improperly denied any right. First, the arbitration never occurred because summary judgment was entered by the court the day before the scheduled arbitration date. Thus, Kellar was deprived of nothing and the request for a jury trial became moot.

Second, arbitration is not binding. Loc.R. 2.53 S provides for an appeal from a decision of the Board of Arbitration to the Common Pleas Court of

Montgomery County. Specifically, Loc.R. 2.53 W provides that "[a]ll cases which have been duly appealed shall be tried de novo by the assigned judge."

Therefore, Kellar did not lose her right to a jury trial because the case was referred to arbitration. As a matter of law, Kellar had no right to a jury trial after the motion for summary judgment was granted. The third assignment of error is overruled.

For the above reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

WILSON and BROGAN, JJ., concur.