**EBLIN, Appellant,**

v.

**CORRECTIONS MEDICAL CENTER, Appellee.**

[Cite as *Eblin v. Corr. Med. Ctr.,* 158 Ohio App.3d 801, 2004-Ohio-5547.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–388.

Decided Oct. 19, 2004.

Kennedy & Knoll, Laren E. Knoll and Nicholas E. Kennedy, for appellant.

Jim Petro, Attorney General, and Susan M. Sullivan, Assistant Attorney General, for appellee.

BROWN, Judge.

{¶ 1} Debra Eblin, plaintiff-appellant, appeals from a judgment of the Ohio Court of Claims in which the court found Corrections Medical Center, defendant-appellee, not liable for intentional tort and intentional infliction of emotional distress.

{¶ 2} Appellant is a licensed practical nurse and was employed in that capacity with appellee from April 31, 1997, to August 1, 2000. On May 29, 1998, near the beginning of the third shift, appellant sustained a back injury while lifting a patient. Appellant did not begin to feel any discomfort from the injury until approximately three hours later. Appellant reported the incident to the charge nurse, Kathy Wilgus, and completed an accident report at Wilgus's request. Wilgus asked appellant whether she could finish her shift, to which appellant responded that she could. Appellant worked the final two to three hours of her shift.

{¶ 3} At the end of her shift, appellant was in pain and wished to go home. However, the first-shift charge nurse, Candace Breunig, telephoned appellant and "mandated" her to work another eight-hour shift. "Mandation" occurs when an employee from a prior shift is required to continue working the following shift as a result of the facility's having too few staff. When appellant asked Breunig whether Wilgus had informed her of appellant's injury, Breunig said yes, but she

was still going to mandate her. Appellant then went to speak to Breunig in person and told Breunig that she needed to leave to get medical attention. However, appellant testified that she did not go into detail about her injury because she assumed Breunig had a copy of the accident report. Appellant claims Breunig told her: "I do not give a shit, you're staying." There was testimony at trial that Breunig had before told the nursing staff that she would report any refusal to work overtime and that refusal could lead to termination. Further, appellant's collective-bargaining agreement through her union and employee handbook indicated that an employee could be terminated due to insubordination, such as refusing mandation. Appellant continued working but complained of pain and cried throughout the shift. Several other employees allegedly tried to get permission for appellant to leave, but appellant was not permitted to do so. Appellant claims that she also continued to attempt to get permission from Breunig to leave work, but Breunig never responded. Breunig testified at trial that she did not remember either Wilgus or appellant telling her that appellant was injured, and she denied that she mandated appellant knowing she was injured.

{¶ 4} The charge nurse that replaced Breunig for the following shift allowed appellant to leave 30 minutes early, and appellant immediately scheduled an appointment with her doctor. Until she could get an appointment, she rested in bed. She was eventually diagnosed with cervical strain, lumbar strain, posttraumatic fibromyalgia, and segmental somatic dysfunction. She testified that she continues to suffer pain.

{¶ 5} On May 25, 2000, appellant filed an action against appellee, alleging intentional tort, failure to furnish a safe place of employment pursuant to R.C. 4101.12, and intentional infliction of emotional distress. The case proceeded to a bifurcated trial on liability on April 14, 2003. During trial, appellant dismissed her claim for failure to furnish a safe place of employment pursuant to R.C. 4101.12. Four witnesses testified at trial: appellant; Michelle Gray, a registered nurse who worked with appellant during her mandated shift; Wilgus; and Breunig. Further, the depositions of appellant's medical experts, Drs. Stephanie Winegardner and Brant Holtzmeier, were received into evidence. After the case was submitted to the court, it was reassigned to another judge, who decided the case upon the existing record. On March 10, 2004, the court issued a decision. The court concluded that appellant had failed to prove that her supervisors knew with certainty or with substantial certainty that she would suffer harm when she was assigned to work an additional eight-hour shift. The court further found that appellant could have refused the overtime and was aware of this option, and that her claim that she would lose her job if she refused to work the mandated shift

was not supported by the evidence. Appellant appeals from the judgment of the trial court, asserting the following three assignments of error:

1. The trial court erred in finding that the appellee did not commit an intentional tort against the appellant.

2. The trial court erred in excluding medical testimony about and of Dr. Holtzmeier and Dr. Winegardner from evidence in determining whether appellee committed an intentional tort against the appellant.

3. The trial court erred in finding that the appellee did not commit the tort of intentional infliction of emotional distress against the appellant.

{¶ 6} Appellant argues in her first assignment of error that the trial court erred in finding that appellee did not commit an intentional tort. Appellant's contention is basically that the trial court's judgment was against the manifest weight of the evidence. An appellate court will not reverse a judgment claimed to be against the weight of the evidence if the record contains some competent, credible evidence going to every element of the case. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79, 10 OBR 408, 461 N.E.2d 1273. Every reasonable presumption must be made in favor of the judgment and the findings of fact. Id. If the evidence is susceptible of more than one construction, we must give it the interpretation that is consistent with the verdict and judgment most favorable to sustaining the verdict and judgment. Id.

{¶ 7} The controlling test for an employer's intentional tort is set forth in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus:

Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified as set forth above and explained.)

{¶ 8} In the present case, after reviewing the record, we find that the trial court's judgment was not against the manifest weight of the evidence. The trial court found that appellant failed to demonstrate all three factors in *Fyffe*. Although our review of the evidence leads us to conclude that appellant failed to

prove any of the *Fyffe* factors, we find the lack of evidence to support the second factor most evident. Under the second factor, the employee must prove that the employer had knowledge that if the employee was subjected to the dangerous process, procedure, instrumentality or condition, then harm to the employee was a substantial certainty. There is a high burden of proof to prove the substantial-certainty factor. As the court stated in the second paragraph of the syllabus in *Fyffe:*

> To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)

■ {¶ 9} Thus, there must be proof that the employer acted despite a known threat that harm to an employee was substantially certain to occur. *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, 522 N.E.2d 477. Proof of the employer's intent "is by necessity a matter of circumstantial evidence and inferences drawn from alleged facts appearing in the depositions, affidavits and exhibits." *Emminger v. Motion Savers, Inc.* (1990), 60 Ohio App.3d 14, 17, 572 N.E.2d 257.

{¶ 10} In the present case, there was simply not enough evidence to establish that appellee knew that mandating appellant was substantially certain to cause further harm. Foremost, appellant failed to establish the level of knowledge that appellee had about her injury in order to demonstrate that appellee was substantially certain that appellant would suffer harm. Appellant testified that she told Breunig that she had injured her back, but she admittedly did not give Breunig any details. Appellant also testified that Breunig said that Wilgus had told her she was injured, but Wilgus testified that she did not remember telling Breunig. Breunig testified that she did not remember Wilgus or appellant telling her about the injury. However, assuming appellant told Breunig about her injury, as she claims, there is no evidence that Breunig knew the level of pain or the severity of the injury. Thus, the only conclusion that may be reached from the evidence and testimony is that Breunig had a cursory knowledge that appellant had back pain.

It cannot be said that working with every degree of back pain is substantially certain to result in further injury. As appellee points out, many people in all types of occupations continue to work with various levels of back pain and never develop any further problems or worsen their condition. If Breunig had known that appellant was suffering immense pain from her back injury or was incapacitated from the injury, appellant's evidence of the substantial-certainty requirement would be more persuasive. However, there was no evidence to show such knowledge.

{¶ 11} Further, appellant said that she did not go into detail about her injury with Breunig because she assumed that Breunig had read her accident report. However, Breunig did not remember reading the accident report. Likewise, Wilgus did not remember giving the report to Breunig and said that giving accident reports to the charge nurse on the following shift was not standard practice. Thus, again, Breunig could not have been aware of appellant's level of pain or injury via the accident report. Notwithstanding, even if Breunig had read the accident report, as assumed by appellant, appellant reported the injury on the report as merely "lower back pain." This description is vague, and it is not substantially certain that one who continues to work with "lower back pain" will suffer harm. In addition, Wilgus did not remember recording appellant's injury in the 24–hour report; thus, Breunig could have received no further information on appellant's injuries via this document.

{¶ 12} This is not a situation as in *Youssef v. Parr, Inc.* (1990), 69 Ohio App.3d 679, 688, 591 N.E.2d 762, in which the supervisor had full knowledge of the employee's back injury, gave physical assignments to the employee in contravention of two doctor's orders, and specifically plotted to assign strenuous tasks to the employee with the intent to aggravate the employee's existing injury or purposely assigned tasks that were substantially certain to cause further injury. Here, the evidence establishes that Breunig had only a perfunctory knowledge that appellant had back pain, and appellant admitted that she went into no detail as to the specifics of her injury and pain. Further, there is clearly no evidence that Breunig specifically schemed to mandate appellant or assigned her any more strenuous work than normal with the intent to cause appellant harm, as in *Youssef.*

{¶ 13} Gray testified that appellant reported to the second shift crying and, apparently, cried throughout her shift. This display of emotion and pain could be viewed as a signal to appellee that the pain and level of injury were so severe that there was a risk, within a substantial certainty, that appellant's further working would cause more serious injury. However, there is no evidence that appellee was aware of appellant's crying. Although Gray stated that she and other workers on the floor tried several times throughout the day to get appellant

released from the mandate, her exact actions are not clear, and she testified that she did not remember talking to Breunig about appellant. Thus, neither appellant's crying nor Gray's observations had any effect on appellee's awareness of appellant's condition.

{¶ 14} The focus of an intentional tort action under the standards set forth in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, is on the knowledge of the employer regarding the risk of injury. See id. at 112, 522 N.E.2d 489 (the plaintiff must prove that the employer had actual knowledge of the exact dangers that ultimately cause injury). Here, although appellee's conduct could arguably be said to have put appellant at risk of probable harm or be characterized as negligent or reckless, this level of appreciation of risk is insufficient. Appellant failed to present any evidence that appellee had sufficient knowledge regarding the risk of injury in order to meet the substantial-certainty requirement. Accordingly, we do not believe that the current facts present a case in which the employer was substantially certain that its actions would cause further harm to the employee, particularly given our standard of review. For these reasons, appellant's first assignment of error is overruled.

{¶ 15} Appellant argues in her second assignment of error that the trial court erred in excluding portions of the medical testimony of Drs. Holtzmeier and Winegardner in determining whether appellee committed an intentional tort against her. A trial court has broad discretion in determining whether to admit or exclude expert testimony, and, thus, we will not reverse its decision absent an abuse of discretion. *State v. Jones* (2000), 90 Ohio St.3d 403, 414, 739 N.E.2d 300. "Abuse of discretion" connotes an arbitrary, unreasonable, or unconscionable decision by the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 16} In the present case, the trial court sustained several of the objections appellee made during the depositions of Drs. Holtzmeier and Winegardner. Appellant cites seven specific objections that the trial court sustained and contends that the trial court should have permitted this testimony because it was necessary to establish proximate cause between appellant's mandation and her physical and emotional health. However, even if the excluded testimony of Drs. Holtzmeier and Winegardner could have established proximate cause, it would not have supported the conclusion that appellee knew with substantial certainty that mandating appellant would cause further injury, which this court found appellant failed to demonstrate under her first assignment of error. Further, as appellee points out, appellant's experts did testify in other parts of their depositions that appellant's condition was the proximate result of her mandatory overtime shift; thus, even if the trial court's rulings on the cited testimony were erroneous, the exclusion of this testimony could not be prejudicial.

■ {¶ 17} The only excluded testimony cited by appellant that could even arguably be construed to support the substantial-certainty requirement in *Fyffe* is the following testimony of Dr. Holtzmeier:

Q. And when you—when a person would receive a—or sustain an injury, such as lumbar and cervical strain, like Ms. Eblin, is it common sense that rest is the initial treatment?

\* \* \*

THE WITNESS: Yes.

Q. Okay. And anyone in the medical field would find that—would know that to be common sense?

A. Yes.

{¶ 18} Although at first glance this testimony may seem to support the substantial-certainty requirement, we find that it lacks any probative value on this point. While it may be "common sense" to someone in the medical field that rest is the initial treatment for a back injury, "common sense" as to the proper treatment for an injury does not equate with substantial certainty that further harm will occur without rest. Even if it were common sense that failure to rest after experiencing pain in the lower back makes further injury possible, likely, or probable, appellant failed to present any evidence that failure to treat lower back pain with rest makes further harm substantially certain. The mere knowledge and appreciation of a risk of injury is not "intent." *Van Fossen,* supra, paragraph six of the syllabus. Therefore, Dr. Holtzmeier's excluded testimony is not helpful in this respect. For these reasons, appellant's argument is without merit, and her second assignment of error is overruled.

■ {¶ 19} Appellant argues in her third assignment of error that the trial court erred in finding that appellee did not commit the tort of intentional infliction of emotional distress. The Supreme Court of Ohio has recognized the common-law tort of intentional infliction of emotional distress, holding: "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus. To maintain a claim for intentional infliction of emotional distress, the following elements must be proved: (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be

expected to endure. *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 366, 588 N.E.2d 280. In order to constitute serious emotional distress for the purposes of a claim of intentional infliction of emotional distress, the injury that is suffered must surpass upset or hurt feeling and must be such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Davis v. Billow Co. Falls Chapel* (1991), 81 Ohio App.3d 203, 207, 610 N.E.2d 1024.

{¶ 20} Appellant cites no cases in which recovery for intentional infliction of emotional distress was permitted under similar circumstances, and our own research reveals none. After reviewing the evidence, we find appellee's actions do not rise to the level necessary to constitute the tort of intentional infliction of emotional distress. Even if we were to assume arguendo that appellee's actions proximately caused appellant psychological injury and appellant suffered serious mental anguish of a nature no reasonable person could be expected to endure, pursuant to the third and fourth elements of a claim of intentional infliction of emotional distress enunciated in *Ashcroft*, we find that appellant failed to demonstrate the first and second elements. With regard to the first element of a claim of intentional infliction of emotional distress, we found under appellant's first assignment of error that appellant had failed to demonstrate that it was substantially certain that mandating appellant to work a second shift would cause her further injury. We found that there was no evidence that Breunig knew the degree of appellant's back pain and injury. Similarly, for purposes of appellant's claim of intentional infliction of emotional distress, without such knowledge, even if Breunig knew that appellant had some degree of lower back pain, we cannot say that appellee should have known that mandating appellant would result in severe emotional distress.

{¶ 21} Likewise, with regard to the second element, even if Breunig had knowledge that appellant had some level of back pain, we cannot say that appellee's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and should be considered completely intolerable in a civilized community. Breunig was merely performing the requirements of her position as staff nurse, and, even if she had been aware that mandating appellant might cause some emotional distress, her actions were not extreme and outrageous. Therefore, the trial court did not err in finding that appellee did not commit the tort of intentional infliction of emotional distress. For these reasons, appellant's third assignment of error is overruled.

{¶ 22} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.

Judgment affirmed.

LAZARUS, P.J., and SADLER, J., concur.