NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0238n.06

No. 10-4352.

FILED

*Feb 29, 2012*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ARTHUR F. JONES,                                 )
                                                 )
     Plaintiff-Appellant,                        )
                                                 )
v.                                               )   ON APPEAL FROM THE UNITED
                                                 )   STATES DISTRICT COURT FOR THE
O P T I O N   O N E   M O R T G A G E            )   SOUTHERN DISTRICT OF OHIO
CORPORATION, ET AL.,                             )
                                                 )
     Defendants-Appellees.                       )
                                                 )
                                                 )

BEFORE:  COLE, GILMAN, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  In this diversity action, Plaintiff-Appellant Arthur F. Jones ("Jones") appeals the district court's grant of summary judgment in favor of mortgage lenders Defendants-Appellees Sand Canyon Corporation f/k/a Option One Mortgage Corporation ("Option One") and American Home Mortgage Servicing Inc. ("AHMSI"), dismissing Jones's state and federal claims arising out of Option One's attempts to collect mortgage payments owed by Jones.  We **AFFIRM**.

**I.**

**A.**

Jones is in the business of purchasing properties, making needed repairs, and then renting or selling the properties.  Option One was formerly a residential mortgage lender and servicer.  Between

2003 and 2007, Jones executed nine promissory notes payable to Option One, which were secured by mortgages on properties he owned. Under the terms of the notes, Jones was required to make loan payments on the first day of each month. However, Jones set up his automatic bank payments so that his loan payments would be made on the fifth or sixth day of each month. As a result, Option One representatives would call Jones between the first and sixth day of each month regarding his mortgage payments. Because each loan was separately serviced, Jones would receive separate calls regarding each loan.

Under the terms of the mortgage agreements, if Jones failed to insure his properties, Option One was entitled to obtain insurance coverage at Jones's expense. In May 2007, Option One informed Jones that it had not received proof of insurance relating to several of his mortgaged properties. In June 2007, Option One obtained insurance coverage ("forced-placed insurance") for seven of these properties, not including Jones's home residence, and applied additional charges to Jones's mortgage accounts. Jones did not increase the amount of his automatic payments, and therefore the monthly payments were insufficient to cover the additional charges on his accounts.

In August 2007, Option One began sending Jones letters informing him that his mortgage payments were insufficient to cover the amounts due. Jones called Option One and was told about the forced-placed insurance. During that call, Jones informed Option One that he already had insurance coverage through Wade Insurance, and Option One advised Jones to send it proof of coverage. The following month, an Option One representative spoke with a representative of Wade Insurance and advised her to fax the declarations page of Jones's insurance policy as proof of insurance. In September and October 2007, having received no proof of insurance, Option One sent

additional letters informing Jones that his payments were deficient and that Option One would no longer accept partial payments. In November 2007, Jones again did not pay the full amount due on several of his accounts, and Option One rejected the partial payments.

Jones testified that whenever he received letters notifying him that Option One had not received proof of insurance, he called Wade Insurance and asked that someone send proof of insurance to Option One. Jones further testified that Wade Insurance agents told him that they had sent proof of insurance to Option One. But he also testified that a Wade Insurance representative told him that she had been having problems sending faxes to Option One and had received calls from Option One informing her that it had not received the proof of insurance. Option One asserts that it finally received Jones's proof of insurance on November 20, 2007, a date that Jones does not challenge. (*See* Jones Dep. at 294.) Option One then cancelled the forced-placed insurance on his properties and reimbursed him for the payments that had been applied to pay for the forced-placed insurance.[1]

Throughout September, October, and November, Option One representatives called Jones in an attempt to obtain payment for the shortfalls in his loan payments. Because each loan was separately serviced, he received separate calls for each loan. Jones received additional calls in October and December of 2007 because he did not make his monthly payment until more than three

---

[1]Option One representative Dale Sugimoto averred that Jones was "reimbursed" after Option One received proof of insurance, but did not explain whether that meant the funds were sent back to Jones or credited through an accounts adjustment. (Sugimoto Decl. at ¶ 11.)

weeks into each month. Jones testified that he sometimes received between twenty and thirty calls a day from Option One representatives.

On December 5, 2008, Option One reported to credit bureaus that five of Jones's accounts were thirty days past due. In February 2008, Jones learned that Option One had reported some of his accounts as delinquent when he attempted to get a loan to refinance one of his properties. Jones's mortgage broker informed Jones that his credit score, which had ranged from 620 to 643 between June 2006 and May 2007, had dropped to approximately 544 and was not high enough to qualify for a loan.

In Spring 2008, Jones stopped making all payments on his Option One mortgage accounts. Option One then began foreclosure proceedings as to some of Jones's properties, including his home residence.

AHMSI purchased certain of Option One's assets, including the right to service Jones's loans, in April 2008. Before this time, AHMSI had no involvement with any of Jones's loans.

**B.**

Jones originally filed a nearly identical action in the Southern District of Ohio in May 2008, which he moved to voluntarily dismiss at the close of discovery. The district court dismissed Jones's sole federal claim under the Fair Credit Reporting Act ("FCRA") with prejudice and his state-law claims without prejudice.

Jones then filed this lawsuit in state court, alleging claims for (1) invasion of privacy, (2) intentional infliction of emotional distress, (3) tortious interference with a contract, (4) violation of the Fair Debt Collection Practices Act ("FDCPA"), (5) violation of the FCRA, (6) civil conspiracy,

and (7) trade libel.  Defendants removed the case to federal court and filed a motion to dismiss or alternatively for summary judgment, which the district court granted.  Jones timely appealed, asserting error only with respect to his state-law claims, thereby abandoning his federal claims. Jones also asserts that the district court improperly weighed the evidence in granting summary judgment.

## II.

We review a district court's grant of summary judgment *de novo*.  *See Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 700 (6th Cir. 2007)).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). However, "summary judgment is inappropriate when the evidence raises a genuine issue about a material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Clay*, 501 F.3d at 700 (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (internal quotation marks and alterations omitted)).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to identify "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Evidence is viewed in the light most favorable to the nonmoving party.  *Clay*, 501 F.3d at 700 (citation omitted).

A.  Improper Weighing of Evidence

Jones first claims that the district court violated Rule 56 of the Federal Rules of Civil Procedure by relying solely on affidavits filed by the defendant. Jones claims that the facts averred in the declaration of Option One representative Dale Sugimoto and the deposition of Option One employee Steven Lujan "are directly disputed by the Plaintiff's depositional testimony." (Jones Br. at 10.) Jones also argues that the district court ignored evidence produced "during interrogatories and depositions" that demonstrate that Jones had provided "the proper insurance and other payments." (*Id.*)

This claim is without merit. There is no evidence that the district court failed to consider all the evidence before it. In fact, Jones's deposition testimony is cited throughout the district court's order. Further, although Jones claims that he produced evidence to establish a material factual dispute and to demonstrate that he had provided proper insurance and made payments, he cites only a single page of his deposition in support of his argument and does not explain how anything on that page establishes a genuine dispute with respect to a material fact.[2]

"A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Because Jones relies solely on conclusory allegations and fails to establish that the district court improperly ignored any evidence in granting summary judgment, we find that the

---

[2]Jones cites page 313 of his deposition transcript, without elaboration. In that portion of his testimony, Jones stated that he received the bulk of calls from Option One between the 1st and 6th day of each month, that he understood that payments were technically due on the 1st of each month, and that Option One would not impose a late charge until the 15th of each month.

district court properly evaluated the evidence in accordance with Rule 56 of the Federal Rules of Civil Procedure.

B. Invasion of Privacy

Jones next appeals the district court's grant of summary judgment on his invasion-of-privacy claim. The right of privacy is invaded by, *inter alia*, "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Welling v. Weinfeld*, 866 N.E.2d 1051, 1053 (Ohio 2007) (quoting *Housh v. Peth*, 133 N.E.2d 340, 343 (Ohio 1956)). However, a creditor "has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy." *Housh*, 133 N.E.2d at 344. In *Housh*, the Ohio Supreme Court found that a creditor committed invasion of privacy by "initiat[ing] a systemic campaign of harassment of the plaintiff, not only in numerous telephone calls . . . every day for a period of three weeks, some of which were late at night, but also calls to her superiors over the telephone, informing them of the debt . . . ." *Id*.

In response to defendants' motion for summary judgment, Jones argued merely that the invasion-of-privacy claim should go to a jury because the court must assume at this stage that defendants' actions were unreasonable. But Jones provided no relevant authority for that proposition. The case law, in fact, suggests the opposite. *See, e.g.*, *Soc'y Bank, N.A. v. Kellar*, 579 N.E.2d 717, 720 (Ohio Ct. App. 1989) (finding that a creditor acted reasonably as a matter of law when it made numerous calls to plaintiff at her home, when it was never asked to stop, and the phone calls were not abusive in nature and plaintiff did not fear for her safety or welfare).

On appeal, Jones argues that the district court erred in finding that Jones did not identify any facts from which we could conclude that defendants' actions were unreasonable, and makes vague and conclusory references to evidence that he claims to have presented to demonstrate that defendants reported false information. However, the evidence to which Jones points was never actually put before the district court,[3] does not support what Jones alleges,[4] or is irrelevant for the purposes of Jones's claim.[5]

Option One met its burden by producing specific evidence to demonstrate that Jones was contacted multiple times per day regarding his late payments only because he had nine separate loans, which Jones conceded he neither paid on time, nor in full, because he did not adjust his automatic bank payments to cover the additional charges for forced-placed insurance. In response,

---

[3]Jones refers to interrogatory answers—presumably from his initial lawsuit— in support of his claims. But those answers were never submitted to the district court as evidence and are therefore not in the record. Jones also asserts that he presented emails and phone logs that demonstrate defendants knew of his separate insurance. But Jones does not provide any specifics or citations to the record.

[4]In arguing that he presented documentation of his separate insurance, Jones merely cites to certain deposition exhibits that contain copies of the promissory notes. But Jones does not explain how any of the notes provide evidence that Option One knew that Jones was maintaining the required insurance through a separate provider.

[5]Jones asserts that Option One representative Lujan offered testimony that supported the proposition that defendants "knew of [Jones's] separate insurance and stated that they would correct their own errors made." (Jones Br. at 11.) But Jones not only misquotes Lujan in his brief, he does not explain how Lujan's admission—that he was unaware of any program that checked Option One's automated reporting program for "false positives"—provides support for Jones's claim of invasion of privacy. In any event, Lujan testified that before information is reported to a credit agency, "a report is run and reviewed by . . . the customer service division." (Lujan Dep., R. 12, at 15.) He also testified that there were no incorrect reports submitted with respect to Jones.

Jones identified no specific facts showing that there is a genuine issue for trial regarding when Option One received proof of insurance, and whether he made his payments when due. Accordingly, Jones's invasion-of-privacy claim based on allegedly improper phone calls fails as a matter of law.

### C. Intentional Infliction of Emotional Distress

To prevail on an intentional-infliction-of-emotional-distress claim, a plaintiff must prove four elements:

> (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure.

*Eblin v. Corr. Med. Center*, 822 N.E.2d 814, 820–21 (Ohio Ct. App. 2004) (citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 588 N.E.2d 280, 284 (Ohio Ct. App. 1990)).

Jones argues that the district court erred in granting summary judgment on this claim because he offered evidence demonstrating that the defendants "set up an automated system of immediate credit reporting for any alleged deficiencies; [sic] without a systematic check for false positives." (Jones Br. at 13.) This claim is also without merit. Option One's system of reporting to credit agencies payment deficiencies in mortgage accounts, after repeatedly providing notice of those deficiencies, clearly does not constitute extreme and outrageous conduct. *See Morrow v. Reminger & Reminger Co.*, 915 N.E.2d 696, 714 (Ohio App. Ct. 2009) ("Whether conduct is 'extreme and outrageous' is initially a question of law for the court"). Accordingly, this claim fails as a matter of law.

D. Tortious Interference With Contract

To prove a claim of tortious interference with a contract, a plaintiff must establish "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Kenty v. Transmerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). The district court correctly held that Jones's intentional-interference-with-contract claim failed on each of the first four elements. Jones never identified evidence of an actual or prospective contract between himself and a mortgage lender. Jones merely pointed to the deposition of mortgage lender Brian McKenzie, who stated his belief that Jones would have been able to qualify for a loan in February 2008 if his credit score was higher than 660. This hypothetical contract that might have come to pass if Jones had maintained a sufficiently high credit score cannot serve as the basis of a claim of intentional interference with contract. On appeal, Jones argues for the first time that defendants breached their own mortgage contracts with Jones, and that the tortious-interference-with-contract claim was actually "derivative of" this breach of contract. Even assuming this claim has any merit, Jones did not make this argument to the district court, and it is therefore waived. *See Taft Broadcasting Co. v. United States,* 929 F.2d 240, 243 (6th Cir. 1991). Accordingly, the district court did not err in granting summary judgment with respect to this claim.

E. Trade Libel

In Ohio, libel is "a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *A & B-Abell*

*Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283, 1289 (Ohio 1995) (citation omitted). Ohio recognizes a qualified privilege in libel actions, which applies where (1) a statement is made in good faith; (2) in which the person communicating has an interest; (3) limited in scope to its purpose; (4) made at a proper occasion; and (5) published in a proper manner to proper parties. *Hahn v. Kotten*, 331 N.E.2d 713, 718–19 (Ohio 1975); *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008). "A qualified privilege may be defeated only if a claimant proves with convincing clarity that a publisher acted with actual malice." *Jackson*, 883 N.E.2d at 1064 (citing *Jacobs v. Frank*, 573 N.E.2d 609, 613 (Ohio 1991)).

The district court properly held that this claim fails as a matter of law because Jones has not identified any evidence to demonstrate that the information reported was inaccurate. Additionally, Jones fails entirely to respond to the district court's holding that, even assuming Jones could establish a prima facie case of libel, defendants would be entitled to a qualified privilege because the statements were made in good faith, in the belief that the information was true, pursuant to Option One's business interest, limited in scope to that interest, at the proper time, in a proper manner, and to the proper parties.

F. Civil Conspiracy

To establish a civil conspiracy, a plaintiff must demonstrate the following: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio App. Ct. 1993). Jones's civil-conspiracy claim fails because he has not identified facts to show an underlying unlawful act or a combination of two or

more persons.   On appeal, Jones concedes that there could not have been a conspiracy between Option One and its successor, AHMSI, but argues for the first time that a civil conspiracy can exist between two or more persons within an organization.  Because Jones did not present this argument to the district court below, it is waived.  *See Taft*, 929 F.2d at 243.  And because Jones has not established a genuine issue of material fact with respect to any independent unlawful act, we affirm the district court's grant of summary judgment on Jones's civil-conspiracy claim.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment on all claims.